UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RUI HOLDING CORP., *et al.*, [1] | ) | Case No. 19-11509 (JTD) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | Related to Docket No. 5 |

**INTERIM ORDER (I) AUTHORIZING POSTPETITION FINANCING,
(II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND
PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS,
(IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY,
(VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the motion, dated July 7, 2019 (the "DIP Motion") of Restaurants Unlimited, Inc.

("Restaurants Unlimited"), Restaurants Unlimited Texas, Inc., and RU Corp. (collectively, the

"Borrowers")[2] and RUI Holding Corp. ("Guarantor"), each as a debtor and debtor in possession

(collectively, the "Debtors") in the above-captioned Chapter 11 cases (collectively, the "Cases"),

seeking entry of an order (this "Interim Order") and a Final Order (defined herein) pursuant to

sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of chapter

11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and

9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2

of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the

"Local Rules"), *inter alia:*

---

[1]     Debtors in these Chapter 11 Cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: RUI Holding Corp. (6192); RU Corp. (8259); Restaurants Unlimited, Inc. (8365); and Restaurants Unlimited Texas, Inc. (5733). The Debtors' headquarters and mailing address is: 411 First Ave. South, Suite 200, Seattle, WA 98104. The Debtors operate restaurants under the following names: Clinkerdagger; Cutters Crabhouse; Fondi Pizzeria; Henry's Tavern; Horatio's; Kincaid's; Maggie Bluffs; Manzana; Newport Seafood Grill; Palisade; Palomino; Portland City Grill; Portland Seafood Company; Scott's Bar and Grill; Simon & Seafort's; Skate's on the Bay; Stanford's; and Stanley & Seafort's.

[2]     Capitalized terms used but not defined herein shall have the meanings given to them in the DIP Motion or the DIP Agreement, as applicable.

(i)      authorizing the Debtors to obtain senior secured postpetition financing on a superpriority basis consisting of a senior secured superpriority term loan facility in the aggregate principal amount of $10,000,000 (the "DIP Facility," and the loans under the DIP Facility, the "DIP Loans") pursuant to the terms and conditions of that certain Debtor-in-Possession Credit Agreement (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "DIP Agreement"), by and among the Borrowers, the Guarantor, Fortress Credit Co LLC, as agent (in such capacity, the "DIP Agent"), for and on behalf of the lenders party thereto from time to time (collectively, the "DIP Lenders"), and the DIP Lenders, substantially in the form of Exhibit B, attached to the DIP Motion;

(ii)      authorizing the Debtors to execute and deliver the DIP Agreement, the other Loan Documents (as defined in the DIP Agreement) and any other agreements and documents related thereto (collectively with the DIP Agreement and the Loan Documents, the "DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)      granting the DIP Facility and all obligations owing thereunder and under the DIP Documents to the DIP Agent and DIP Lenders and all other "Obligations" as described in the DIP Agreement (collectively, the "DIP Obligations") allowed superpriority administrative expense claim status in each of the Cases and any Successor Cases (as defined herein);

(iv)      granting to the DIP Agent, for the benefit of the DIP Lenders and the other Secured Parties (as defined in the DIP Agreement) (the "DIP Secured Parties"), automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral" as defined in

2

section 363(a) of the Bankruptcy Code, which liens shall be subject to the priorities set forth herein;

(v)     authorizing the Debtors to pay the principal, interest (if applicable), fees, expenses and other amounts payable under the DIP Documents as such become due, including, without limitation, continuing commitment fees, closing fees, audit fees, appraisal fees, monitoring fees, liquidator fees, structuring fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Agent's and DIP Lenders' attorneys, advisors, accountants and other consultants, all as provided in, and in accordance with, the DIP Documents;

(vi)     authorizing the Debtors to use the proceeds of the DIP Facility in accordance with the Budget (as defined below);

(vii)     authorizing the Debtors to use the Prepetition Collateral, including the Cash Collateral (as defined below) of the Prepetition Secured Parties under the Prepetition Loan Documents, and providing adequate protection to the Prepetition Secured Parties for any diminution in value of their respective interests in the Prepetition Collateral, including the Cash Collateral;

(viii)     subject to entry of the Final Order, authorizing the Debtors to waive and be prohibited from asserting any surcharge claim subject to entry of a Final Order, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Lenders or the Prepetition Secured Parties upon the DIP Collateral or the Prepetition Collateral (as applicable);

(ix)    subject to entry of the Final Order, authorizing not subjecting the DIP Lenders or the Prepetition Secured Parties to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the DIP Collateral or the Prepetition Collateral (as applicable); and authorizing the Prepetition Secured Parties to be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and for the "equities of the case" exception under section 552(b) to not apply to the Prepetition Secured Parties with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral;

(x)    modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order; and

(xi)    scheduling a final hearing (the "Final Hearing") to consider entry of a Final Order granting the relief requested in the DIP Motion on a final basis and approving the form of notice with respect to the Final Hearing.

The Court having considered the DIP Motion, the exhibits attached thereto, the *Declaration of David Bagley, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 17] (the "First Day Declaration"), the *Declaration of David Bagley, Chief Restructuring Officer of the Debtors, in Support of the Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 6] (the "Bagley Declaration"), and the evidence submitted and argument made at the interim hearing held on July 9, 2019 (the

4

"Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

      A.    **Petition Date**. On July 7, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").

      B.    **Debtors in Possession**. The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    **Jurisdiction and Venue**. This Court has jurisdiction over the Cases, the DIP Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    **Committee Formation**. As of the date hereof, the United States Trustee for the District of Delaware (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a "Creditors' Committee").

E.    **Notice**. Proper, timely, adequate, and sufficient notice of the DIP Motion has been provided under the circumstances and in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

F.    **Debtors' Stipulations**. Subject to and without prejudice to the rights of parties-in-interest as set forth in paragraph 43 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(vii) below are referred to herein, collectively, as the "Debtors' Stipulations"):

(i)    *Prepetition Credit Facility.*  The Prepetition Lenders (as defined below) extended a first priority senior secured revolving credit and term loan facility (the "Prepetition Facility"), pursuant to that certain Third Amended and Restated Credit Agreement, dated as of July 31, 2013 (as amended, restated, amended and restated, waived, supplemented, or otherwise modified from time to time, the "Prepetition Credit Agreement," and together with the other Loan Documents (as defined in the Prepetition Credit Agreement), the "Prepetition Loan Documents"), among the Borrowers, as borrowers, Fortress Credit Co LLC, as agent (the "Prepetition Agent"), and the lenders party thereto from time to time (the "Prepetition Lenders"

and collectively with the Prepetition Agent and any other holders of Prepetition Secured Obligations (as defined below), the "Prepetition Secured Parties"). As of the Petition Date, the Debtors are unconditionally jointly and severally indebted to the Prepetition Secured Parties pursuant to the Prepetition Loan Documents, without objection, defense, counterclaim, or offset of any kind, in respect of loans in the aggregate outstanding principal amount not less than $37,741,726.63 *plus* accrued and unpaid interest with respect thereto of $1,703,030.79 as of June 30, 2019, and any additional fees, costs, expenses (including any attorneys', financial advisors', and other professionals' fees and expenses), premiums (if any), reimbursement obligations, indemnification obligations, contingent obligations, and all other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Prepetition Credit Agreement) owing under or in connection with the Prepetition Loan Documents (collectively, the "Prepetition Secured Obligations").

(ii)    *Prepetition Secured Party Liens and Collateral.* As more fully set forth in the Prepetition Loan Documents, prior to the Petition Date, the Borrowers and Guarantor granted to the Prepetition Agent, for the benefit of the Prepetition Secured Parties, valid, binding, perfected and enforceable first priority liens on, and security interests in, the Prepetition Collateral (as defined in the DIP Agreement) (the "Prepetition Secured Party Liens") subject only to certain exclusions as set forth in the Prepetition Loan Documents.

(iii)    *Prepetition Guaranty.* Pursuant to the Prepetition Loan Documents, the Guarantor has delivered to the Prepetition Agent an unconditional joint and several guaranty of the Prepetition Secured Obligations, which guaranty is secured by the Prepetition Secured Party Liens.

(iv)    *Validity, Perfection and Priority of Prepetition Secured Party Liens and Prepetition Secured Obligations.* Subject to the challenge rights of parties in interest as set forth in paragraph 43 below, each of the Debtors acknowledges, represents, admits, stipulates and agrees that: (a) as of the Petition Date, the Prepetition Secured Party Liens were legal, valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral; (b) as of the Petition Date, and except as expressly permitted under the Prepetition Loan Documents, the Prepetition Secured Party Liens were senior in priority over any and all other liens on, and security interests in, the Prepetition Collateral; (c) the Prepetition Secured Obligations constitute legal, valid, binding, enforceable and non-avoidable obligations of the Debtors; (d) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Secured Party Liens or Prepetition Secured Obligations exist, and no portion of the Prepetition Secured Party Liens or Prepetition Secured Obligations is subject to any challenge or defense including, without limitation, impairment, set off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable, contractual or otherwise), counterclaims, or cross-claims, pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (e) the Debtors and their estates have no (and to the Debtors' knowledge, no other party or entity has any) claims, objections, challenges, causes of actions, and/or choses in action, including, without limitation, "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including, without limitation, any recharacterization, subordination, avoidance, disgorgement, recovery or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against the Prepetition Secured Parties or any

8

of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the Prepetition Loan Documents, the Prepetition Secured Obligations, or the Prepetition Secured Party Liens.  As of the Petition Date, the Debtors are not aware of any liens or security interests over the Prepetition Collateral having priority over the Prepetition Secured Party Liens, except as expressly permitted under the Prepetition Loan Documents (solely to the extent such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Secured Party Liens as of the Petition Date, the "Permitted Prior Liens").[4]  The Prepetition Secured Party Liens were granted to or for the benefit of the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby.  The right of a seller of goods to reclaim goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien.

(v)    *Indemnity.*  The Prepetition Secured Parties, the DIP Agent and the DIP Lenders have acted in good faith, and without negligence, misconduct or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting or obtaining requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Adequate Protection Liens (as defined below), and any of the other rights, remedies, privileges, benefits and protections granted hereunder, any challenges or objections to the DIP Facility or the use of Prepetition Collateral (including Cash Collateral), and all documents related to and all

---

[4] Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Prior Lien is valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP Agent, the Prepetition Agent, the Prepetition Lenders, or a Creditors' Committee (if appointed), to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Permitted Prior Lien and/or security interests.

transactions contemplated by the foregoing, or hereunder.  Accordingly, the Prepetition Secured Parties, the DIP Agent, the DIP Lenders and the other DIP Secured Parties shall be and hereby are indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto, except as otherwise expressly provided under the DIP Documents.  No exception or defense in contract, law or equity exists as to any obligation set forth, as the case may be, in this paragraph F(v), in the Prepetition Loan Documents or in the DIP Documents, to indemnify and/or hold harmless the Prepetition Secured Parties, the DIP Agent, the DIP Lenders or the other DIP Secured Parties, as the case may be, and any such defenses are hereby waived.

(vi)   *No Control.* None of the Prepetition Secured Parties, DIP Agent, and the DIP Lenders are control persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order, the DIP Facility, the DIP Documents and/or the Prepetition Loan Documents.

(vii)   *Release.*  The Debtors, on behalf of themselves and their respective estates, forever and irrevocably release, discharge and acquit the current and former Prepetition Secured Parties, the DIP Agent, and all current and future DIP Lenders and other DIP Secured Parties, and each of their respective former, current and future officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest and assigns (each, a "Releasee" and collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or

judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to this Interim Order, the DIP Facility, the DIP Documents, the Prepetition Credit Facility, the Prepetition Loan Documents and/or the transactions contemplated hereunder or thereunder including, without limitation, (x) any so-called "lender liability" or equitable subordination or recharacterization claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code or applicable non-bankruptcy law, and (z) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Secured Parties, the DIP Agent and/or the DIP Lenders.  The Debtors further waive and release any defense, right of counterclaim, right of set-off, right of recoupment or deduction to the payment of the Prepetition Secured Obligations and the DIP Obligations which the Debtors may have now or may claim to have against the Releasees, arising out of, connected with or relating to any and all acts, omissions or events occurring prior to this Court entering this Interim Order.

G.  **Cash Collateral**.  Any and all of the Debtors' cash, including cash and other amounts on deposit or maintained in any account or accounts by the Debtors, and any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral existing as of the Petition Date, and the proceeds of any of the foregoing, is the Prepetition Secured Parties' cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

H.    **Findings Regarding Corporate Authority**. Each Debtor has all requisite corporate power and authority to execute and deliver the DIP Documents to which it is a party and to perform its obligations thereunder.

I.    **Findings Regarding Postpetition Financing**.

(i)    *Request for Postpetition Financing*. The Debtors seek authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Documents, and (b) use Cash Collateral on the terms described herein to administer their Cases and fund their operations.   At the Final Hearing, the Debtors will seek final approval of the proposed postpetition financing and use of Cash Collateral arrangements pursuant to a proposed final order (the "Final Order"), which shall be in form and substance acceptable to the DIP Agent and the Required Lenders.  Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

(ii)    *Priming of the Prepetition Secured Party Liens*. The priming of the Prepetition Secured Party Liens by the DIP Liens under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and this Interim Order, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses to the benefit of their estates and creditors.  The Prepetition Agent consents to such priming liens on behalf of the Prepetition Secured Parties, which shall receive adequate protection as set forth in this Interim Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any diminution in value ("Diminution in Value") of each of their respective interests in the Prepetition Collateral (including Cash Collateral).

(iii)    *Need for Postpetition Financing and Use of Cash Collateral.*  The Debtors have an immediate and critical need to use Cash Collateral on an interim basis and to

obtain credit on an interim basis pursuant to the DIP Facility in order to, among other things, enable the orderly continuation of their operations and to administer and preserve the value of their estates. The ability of the Debtors to maintain business relationships with their vendors, suppliers and customers, to pay their employees and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, and parties-in-interest. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms.* Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility.  The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing on a postpetition basis is not otherwise available without granting the DIP Agent (for the benefit of the DIP Secured Parties) the DIP Liens, the DIP Superpriority Claim and other protections on the terms set forth herein.

(v)    *Use of Proceeds of the DIP Facility.* As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and the authorization to use

Cash Collateral, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties require, and the Debtors have agreed, that proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of this Interim Order and the DIP Documents and in accordance with the budget (as the same may be modified from time to time consistent with the terms of this Interim Order and the DIP Documents and subject to such variances as permitted in the DIP Agreement, and as set forth in paragraph 20 hereof, the "Budget"),[5] solely for: (a) working capital, (b) other general corporate purposes of the Borrowers (as defined in the DIP Agreement); (c) permitted payment of costs of administration of the Cases; (d) payment of the Adequate Protection Fees; and (e) payment of such other prepetition obligations as the DIP Agent and DIP Lenders shall agree or the Court shall approve.

(vi)     *Application of Proceeds of DIP Collateral.* As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and authorization to use Cash Collateral, the Debtors, the DIP Agent, the DIP Lenders and the Prepetition Agent on behalf of the Prepetition Secured Parties have agreed that as of and commencing on the date of the Interim Hearing, the Debtors shall apply the proceeds of DIP Collateral in accordance with this Interim Order.

J.     **Adequate Protection**. The Prepetition Agent on behalf of the Prepetition Secured Parties has negotiated in good faith regarding the Debtors' use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtors' estates and continued operation of their businesses, in accordance with the terms hereof. The Prepetition Agent on behalf of the Prepetition Secured Parties has agreed to permit the Debtors to use the Prepetition Collateral, including the Cash Collateral, in accordance with the terms and conditions set forth herein, including the protections afforded parties acting in "good faith" under section

---

[5] A copy of the Budget is attached hereto as **Exhibit 1**.

363(m) of the Bankruptcy Code.  The Prepetition Secured Parties are entitled to the adequate protection as and to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral. Based on the DIP Motion and on the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the Prepetition Agent's consent to the use of the Prepetition Collateral (including Cash Collateral); provided, that nothing in this Interim Order or the other DIP Loan Documents shall (x) be construed as a consent or admission by any Prepetition Secured Party that it would be adequately protected in the event debtor in possession financing is provided by a third party (i.e., other than the DIP Lenders) or a consent to the terms of any other such financing, including the consent to any lien encumbering the Prepetition Collateral (whether senior or junior) or to the use of Cash Collateral (except under the terms hereof), or (y) prejudice, limit or otherwise impair the rights of the Prepetition Agent (for the benefit of the Prepetition Secured Parties) to seek new, different or additional adequate protection under any circumstances.  Pursuant to sections 361, 363, 364 and 507(b) of the Bankruptcy Code, as adequate protection, the Prepetition Secured Parties, as applicable, will receive adequate protection liens and superpriority claims, as more fully set forth herein.

K.      **Sections 506(c) and 552(b)**. In light of (i) the DIP Agent's and DIP Lenders' agreement to subordinate their liens and superpriority claims, as applicable, to the Carve Out; and (ii) the Prepetition Secured Parties' agreement that their liens shall be subordinate to the Carve Out, the DIP Liens (to the extent provided herein) and the DIP Superpriority Claims (as defined below), subject to entry of a Final Order, the DIP Agent, the

15

DIP Lenders and the Prepetition Secured Parties are each entitled to (a) a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

L.   **Good Faith of the DIP Agent and DIP Lenders**.

(i)    *Willingness to Provide Financing*. The DIP Lenders have indicated a willingness to provide financing to the Debtors subject to: (a) entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Facility and authorization to execute and deliver the DIP Documents; (c) satisfaction of the closing conditions set forth in the DIP Documents; and (d) findings by this Court that the DIP Financing is essential to the Debtors' estates, that the DIP Agent and DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Agent's and DIP Lenders' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order and the DIP Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e)*. The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, are ordinary and appropriate for secured financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The terms and conditions of the DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, DIP Agent and the DIP Lenders, with the assistance and counsel of their respective advisors. Use of Cash Collateral and credit to be extended under the DIP

Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Agent and the DIP Lenders within the meaning of section 364(e) of the Bankruptcy Code.

        M.    **Immediate Entry**. Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

        N.    **Interim Hearing**. Notice of the Interim Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the U.S. Trustee, (ii) those entities or individuals included on the Debtors' list of [30] largest unsecured creditors on a consolidated basis, (iii) counsel to the Prepetition Agent and DIP Agent and counsel to NXT; and (iv) all other parties entitled to notice under the Local Rules. The Debtors have made reasonable efforts to afford the best notice possible under the circumstances.

        Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

        IT IS HEREBY ORDERED that:

        1.    Interim Financing Approved. The DIP Motion is granted as set forth herein on an interim basis, the Interim Financing (as defined herein) is authorized and approved, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order. All objections to this Interim Order to the extent not withdrawn, waived, settled or resolved are hereby denied and overruled.

**DIP Facility Authorization**

        2.    Authorization of the DIP Financing. The Interim Financing is hereby approved. The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Documents, and to incur and to perform the DIP Obligations in accordance with,

17

and subject to, the terms of this Interim Order and the DIP Documents, and to deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens (as defined herein) described in and provided for by this Interim Order and the DIP Documents, including, without limitation, the Guarantor providing its joint and several unconditional guarantee of all of the DIP Obligations. The Debtors are hereby authorized to pay, in accordance with this Interim Order, the principal, interest (including PIK interest), fees, expenses and other amounts described in the DIP Documents and all other documents comprising the DIP Facility as such become due and without need to obtain further Court approval, including, without limitation, closing fees, unused facility fees, continuing commitment fees, servicing fees, audit fees, appraisal fees, monitoring fees, liquidator fees, structuring fees, and administrative agent's fees, whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, to implement all applicable reserves and to take any other actions that may be necessary or appropriate, all to the extent provided in this Interim Order or the DIP Documents. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Interim Order and the DIP Documents. Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

3.    Authorization to Borrow. In order to prevent immediate and irreparable harm to the Debtors' estates, from the entry of this Interim Order through and including the earliest to occur of (i) entry of the Final Order or (ii) the Termination Declaration (as defined

below), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Documents and this Interim Order, the Debtors are hereby authorized to request extensions of credit in the form of term loans up to an aggregate outstanding principal amount of not greater than $3,250,000 at any one time outstanding under the DIP Facility (collectively, the "Interim Financing").

4.       DIP Obligations. The DIP Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee appointed in the Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases"). Upon entry of this Interim Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Agent or any of the other DIP Secured Parties, under the DIP Documents or this Interim Order, including, without limitation, all principal, accrued interest, costs, fees, expenses, indemnifications, disbursements and all other amounts under the DIP Documents and all other "Obligations" (as defined in the DIP Agreement). The Debtors shall be jointly and severally liable for the DIP Obligations. The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the DIP Termination Date (as defined herein), except as expressly provided in paragraph 30 herein. No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Documents (including any DIP Obligation or DIP Liens (as defined below), and including, without prejudice to the rights of parties-in-interest as set forth in paragraph 43 herein, in

connection with any adequate protection provided to the Prepetition Secured Parties hereunder) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

    5.    DIP Liens. In order to secure the DIP Obligations, effective immediately upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent, for the benefit of the DIP Secured Parties, is hereby granted, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "DIP Liens") all real and personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of each of the Debtors and their respective estates (collectively, the "DIP Collateral"), including: (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts and other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including all of the issued and outstanding capital stock of each of its subsidiaries), hedge agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, patent rights, license rights, and other intellectual property, general intangibles, (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including tax refunds and any

other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, books and records related to the foregoing, and accessions, products, substitutions and proceeds of the foregoing, wherever located, including insurance or other proceeds (and including, in any event, (x) the right to receive monies, proceeds, or other consideration in connection with the sale, assignment, transfer or other disposition of any Liquor License (as defined in the DIP Agreement) and (y) any amounts in the Trust Account after the payment of all Allowed Professional Fees of Case Professionals); (b) all owned real property interests and leased real property; (c) actions brought under section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral; (d) subject to entry of a Final Order, the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents (other than actions brought pursuant to section 549 of the Bankruptcy Code) (the "Avoidance Action Proceeds"); (e) subject to entry of a Final Order, the Debtors' rights under section 506(c) and 550 of the Bankruptcy Code and the proceeds thereof (the "506(c) Rights"); and (f) all DIP Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date (the "Unencumbered Assets").

6.      DIP Lien Priority.

(a)      *DIP Liens.* The DIP Liens are valid, automatically perfected, non-avoidable, senior in priority and superior to any security, mortgage, collateral interest, lien or claim to any of the DIP Collateral, except that the DIP Liens shall be junior only to (i) the Carve Out; and (ii) the Permitted Prior Liens. Other than as set forth herein or in the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases and shall be valid

and enforceable against any trustee appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases. The DIP Liens shall not be subject to section 510, 549 or 550 of the Bankruptcy Code. Subject to entry of the Final Order, no lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

(b)     *Prepetition Secured Party Liens.* Upon entry of this Interim Order, the Prepetition Secured Party Liens shall be senior in priority and superior to any security, mortgage, collateral interest, lien or claim to any of the DIP Collateral, except that the Prepetition Secured Party Liens shall be junior to: (i) the Carve Out; (ii) the Permitted Prior Liens; and (iii) the DIP Liens.

7.     DIP Superpriority Claims. Upon entry of this Interim Order, the DIP Agent and DIP Lenders are hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (collectively, the "DIP Superpriority Claims") for all DIP Obligations: (a) except as set forth herein and subject to the Carve Out, with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code; and (b) which

22

shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law.

8.    <u>No Obligation to Extend Credit</u>. The DIP Agent and DIP Lenders shall have no obligation to make any loan or advance under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit under the DIP Documents (including, in the case Final Term Loans (as defined in the DIP Agreement), the entry of the Final Order) and this Interim Order have been satisfied in full or waived by the DIP Agent (acting at the direction of the DIP Lenders), in its sole discretion, and in accordance with the terms of the DIP Agreement. In the event that the conditions precedent to the making of any extension of credit under the DIP Documents and this Interim Order have not been satisfied, the DIP Agent and the DIP Lenders may, in their sole and absolute discretion, continue to fund loans or grant any other accommodation to or for the benefit of the Debtors and any such extensions of credit or other accommodations shall constitute DIP Obligations.

9.    <u>Use of Proceeds of DIP Facility</u>. From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility, in accordance with the Budget (and, in any event, consistent with the restaurant locations contemplated in the Budget), only for the purposes specifically set forth in this Interim Order and the DIP Documents, and in compliance with the terms and conditions in this Interim Order and the DIP Documents, unless otherwise ordered by the Court. Immediately upon the Closing Date, the Debtors are authorized to draw the Interim Term Loan (as defined in the DIP Agreement) under the DIP Facility.

**Authorization to Use Cash Collateral**

10.    <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Interim Order, the DIP Facility and the DIP Documents and in accordance with the Budget, the Debtors are authorized to use Cash Collateral until the DIP Termination Date (as

defined herein); *provided, however,* that during the Remedies Notice Period (as defined herein) the Debtors may use Cash Collateral solely to meet ordinary course payroll, payroll tax and sales and use tax obligations and to pay expenses in accordance with the Budget and otherwise necessary to avoid immediate and irreparable harm to the Debtors' estates or as otherwise agreed by the DIP Agent in its sole discretion (acting at the direction of Required Lenders). Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Facility, the DIP Documents, and in accordance with the Budget.

11.    Adequate Protection Liens.  Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Agent, for the benefit of the Prepetition Secured Parties, additional and replacement, continuing, valid, binding, enforceable and automatically perfected postpetition security interests in and liens on the DIP Collateral (the "Adequate Protection Liens").

12.    Priority of Adequate Protection Liens.  The Adequate Protection Liens shall be junior only to the Carve Out, the Permitted Prior Liens and the DIP Liens.  Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases.  The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code.

Subject to entry of the Final Order, no lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Secured Party Liens or the Adequate Protection Liens.

13.    Adequate Protection Superpriority Claims.

(a)    *Prepetition Superpriority Claim.* As further adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral since the Petition Date, the Prepetition Agent, on behalf of the Prepetition Secured Parties, is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "Prepetition Superpriority Claim"); *provided,* that such superpriority claim shall be subject to the Carve Out and shall not be payable from the proceeds of Avoidance Actions pending entry of the Final Order.

14.    Priority of the Adequate Protection Superpriority Claims. Except as set forth herein, the Adequate Protection Superpriority Claim shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c) (subject to entry of the Final Order), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code; *provided, however,* that the Adequate Protection Superpriority Claim shall be junior to the Carve Out and the DIP Superpriority Claim.

15.    Adequate Protection Fees and Expenses. The Debtors are authorized to pay, without further order of the Court, the reasonable and documented fees and expenses (the

"Adequate Protection Fees"), whether incurred before or after the Petition Date, of the Prepetition Agent and Prepetition Lenders, including, without limitation, the fees and expenses of (i) Hunton Andrews Kurth LLP, (ii) Gellert Scali Busenkell & Brown, LLC, (iii) Grant Thornton LLP, and (iv) Goldberg Kohn Ltd. The foregoing professionals shall not be required to comply with the U.S. Trustee fee guidelines or obtain Court approval of their fees; *provided, however,* any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its fee and expense statements or invoices (which shall at least include summaries of tasks and list the rates and hours of each timekeeper, but shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute a waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee and counsel for a Creditors' Committee (if appointed) contemporaneously with the delivery of such fee and expense statements to the Debtors. Any objections raised by the Debtors, the U.S. Trustee or the Creditors' Committee (if appointed) with respect to such invoices within ten (10) days of the receipt thereof will be subject to resolution by the Court. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors. If no objection is raised within such ten (10) day period, such invoice shall be paid promptly by the Debtors without further order of the Court. No attorney or advisor to the Prepetition Agent shall be required to file an application seeking compensation for services for reimbursement of expenses with the Court.

16.     <u>Additional Adequate Protection.</u>   As additional adequate protection against any Diminution in Value of the Prepetition Secured Parties' interests in the Prepetition

Collateral (including Cash Collateral) and subject to the preservation of rights provided in paragraph 43 herein, the Prepetition Secured Obligations shall continue to accrue interest (the "Adequate Protection Interest") at the applicable default rate set forth in the Prepetition Loan Documents.

17.    Adequate Protection Reservation. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases. The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed a finding by the Court or an admission by the Prepetition Secured Parties that the interests of the Prepetition Secured Parties are adequately protected.

**Provisions Common to DIP Financing
and Use of Cash Collateral**

18.    Amendment of the DIP Documents. The DIP Documents may from time to time be amended, modified or supplemented by the parties thereto without further order of the Court if the amendment, modification or supplement is (a) non-material and (b) in accordance with the DIP Documents, provided that notice (which may be provided through electronic mail or facsimile) of any such amendment, modification or supplement shall be provided to counsel to the Creditors' Committee (if appointed) and the U.S. Trustee (collectively, the "Notice Parties"). In the case of a material amendment, modification or supplement to the DIP Documents, the Debtors shall provide notice (which may be provided through electronic mail or facsimile) to the Notice Parties, and parties who have requested notice in the Cases or are affected by the amendment, promptly upon the execution of such amendment, modification or supplement;

*provided however,* that approval of the Court (which may be sought within three (3) business days, and, as to which timeframe no party shall be permitted to object) will be necessary to effectuate any such amendment, modification or supplement; and *provided further* that such amendment, modification or supplement shall be without prejudice to the right of any party in interest to be heard.

19.    <u>Budget Maintenance</u>. The use of borrowings under the DIP Facility and the use of Cash Collateral shall be in accordance with the Budget, subject in all respects to the variances set forth in the DIP Agreement. The Budget shall depict, on a weekly basis, cash receipts, operating disbursements, non-operating disbursements, restructuring costs, restructuring professional fees, net cash flow and other items set forth therein, for the period from the Closing Date through the Maturity Date (each as defined in the DIP Agreement) and such initial Budget shall be approved by, and be in form and substance satisfactory to, the "Required Lenders" (as used in this paragraph 19, as defined in the DIP Agreement) in their sole discretion. The Budget may be updated, modified or supplemented by the Borrowers from time to time upon the approval of the Required Lenders, and each such updated, modified or supplemented budget shall be approved in writing by, and shall be in form and substance satisfactory to, the Required Lenders in their sole discretion and no such updated, modified or supplemented budget shall be effective until so approved and once so approved shall be deemed the "Budget." Each Budget delivered to the DIP Agent shall be accompanied by such supporting documentation as reasonably requested by the DIP Agent and/or the Required Lenders. Each Budget shall be prepared in good faith based upon assumptions which the Debtors believe to be reasonable. A copy of any Budget (or updated Budget) shall be delivered to counsel for the

Creditors' Committee (if appointed) and the U.S. Trustee after (or if) it has been approved by the Required Lenders.

20.    <u>Budget Compliance</u>. The Debtors shall at all times comply with the Budget, subject to the variances set forth in the DIP Documents. The Debtors shall provide the DIP Agent and the DIP Lenders all reports and other information as required in the DIP Documents (subject to the grace periods provided therein), and upon such provision, as additional adequate protection, the Debtors shall at the same time provide such reports and other information to the Prepetition Secured Parties. The Debtors' failure to comply with the Budget (including the variances set forth in the DIP Documents) or to provide the reports and other information required in the DIP Documents or this Interim Order shall constitute an Event of Default (as defined herein), following the expiration of any applicable grace period set forth in the DIP Documents.

21.    <u>Modification of Automatic Stay</u>. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claim, and Adequate Protection Superpriority Claim; (b) permit the Debtors to perform such acts as the DIP Agent, DIP Lenders, or the Prepetition Agent each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agent, the DIP Lenders and the Prepetition Secured Parties under the DIP Documents, the DIP Facility and this Interim Order; and (d) authorize the Debtors to pay, and the DIP Agent, the DIP Lenders and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Interim Order.

22.    Perfection of DIP Liens and Adequate Protection Liens. This Interim Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or recording any intellectual property security agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens or the Adequate Protection Liens, or to entitle the DIP Agent, the DIP Lenders and the Prepetition Secured Parties to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agent and the Prepetition Agent each are authorized to file, as it in its sole discretion deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however,* that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens.  The Debtors are authorized to execute and deliver promptly upon demand to the DIP Agent and the Prepetition Agent all such financing statements, mortgages, notices and other documents as the DIP Agent or the Prepetition Agent may reasonably request.  The DIP Agent and the Prepetition Agent, each in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar

instruments. The Prepetition Agent shall serve as sub-collateral agent for the DIP Agent solely for purposes of perfecting the DIP Agent's liens on all DIP Collateral that, without giving effect to the Bankruptcy Code and this Interim Order, is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party.

23.    Application of Proceeds of Collateral. As a condition to the entry of the DIP Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the Debtors have agreed that as of and commencing on the date of the Interim Hearing, the Debtors shall apply all net proceeds of DIP Collateral, whether from ordinary course collections, assets sales or liquidations, insurance recoveries, condemnations or otherwise, that is sold in the ordinary course or liquidated as follows: _first_, as provided in the DIP Agreement and the Interim Order; and _second_, after indefeasible repayment in full in cash of the DIP Obligations (including provision for contingent obligations) and the termination of the DIP Facility, to reduce the Prepetition Secured Obligations in accordance with the Prepetition Loan Documents; _provided_, _however_, the DIP Agent may designate which proceeds from the disposition of any DIP Collateral to apply first to the reduction of the DIP Obligations and which, in its determination, to apply to the reduction of the Prepetition Secured Obligations. The reduction of the Prepetition Secured Obligations is subject to the preservation of rights provided in paragraph 43 herein.

24.    Protections of Rights of DIP Agent, the DIP Lenders and the Prepetition Secured Parties.

(a)    Notwithstanding anything to the contrary contained in this Interim Order, the DIP Agent and the DIP Lenders are hereby permitted to deem all collections and payments deposited in any deposit account, lockbox, securities accounts, commodity accounts,

cash collateral accounts or any concentration account to be proceeds of DIP Collateral and no such funds credited to any such account shall be subject to disgorgement or be deemed to be held in trust by the DIP Agent or any DIP Lender for the benefit of any Prepetition Secured Party.

(b)     The Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will, whether or not the DIP Obligations have been indefeasibly paid in full in cash, (i) maintain books, records, and accounts to the extent and as required by the DIP Documents, (ii) reasonably cooperate with, consult with, and provide to the DIP Agent and the DIP Lenders and their advisors all such information and documents that any or all of the Debtors are obligated (including upon reasonable request by any of the DIP Agent or the DIP Lenders) to provide under the DIP Documents or the provisions of this Interim Order, (iii) permit, in accordance with the DIP Agreement, consultants, advisors and other representatives (including third party representatives) of the DIP Agent (and, to the extent provided in the DIP Agreement, the DIP Lenders) to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants and other professional advisors (other than legal counsel) as and to the extent required by the DIP Documents, (iv) authorizes the Debtors' management and advisors to consult with the DIP Agent (and, to the extent provided in the DIP Agreement, the DIP Lenders), and its respective consultants, advisors and other representatives, on matters concerning the Debtors' businesses, financial condition, operations and assets, and (v) permit the DIP Agent to conduct, in its reasonable discretion and at the Debtors' reasonable cost and expense, field audits, collateral examinations, liquidation

valuations and inventory appraisals at reasonable times in respect of any or all of the DIP Collateral.

(c)    Subject to entry of the Final Order, no Debtor shall object to the DIP Agent credit bidding up to the full amount of the applicable outstanding DIP Obligations, including any accrued interest and expenses, in any sale of any DIP Collateral, and whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

(d)    Subject to entry of the Final Order, no Debtor shall object to any Prepetition Secured Parties credit bidding up to the full amount of the applicable outstanding Prepetition Secured Obligations, including any accrued interest and expenses, in any sale of any DIP Collateral, and whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, subject in each case to the provision of consideration sufficient to indefeasibly pay in full in cash the DIP Obligations and any Permitted Prior Liens that are subject to the credit bid including, for the avoidance of doubt, the DIP Liens on the DIP Collateral.

25.    <u>Proceeds of Subsequent Financing</u>. If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in violation of the DIP Documents or this Interim Order at any time prior to the indefeasible repayment in full of all DIP Obligations, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such credit or debt is secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied in

accordance with this Interim Order and the DIP Documents. Notwithstanding anything to the contrary herein, and for the avoidance of doubt, it shall not be a violation of the DIP Documents (subject to any debt incurrence limitations as may be set forth in the DIP Agreement) or this Interim Order if the Debtors obtain credit or incur debt pursuant to sections 364(b), 364(c) or 364(d) of the Bankruptcy Code that expressly provides (i) for a provision for termination of the Commitments (as defined in the DIP Agreement) and the indefeasible repayment in full in cash of all of the DIP Obligations contemporaneously with the incurrence of such debt, (ii) for a full release in favor of the DIP Agent and the other DIP Secured Parties and their respective affiliates and (iii) that the initial drawing under such financing is actually used for the purposes described in clause (i); *provided, however*, prior to the indefeasible repayment in full in cash of all of the Prepetition Secured Obligations, no such credit or incurred debt shall be *pari passu* or senior to the Prepetition Secured Party Liens.

26.    <u>Cash Collection</u>. From and after the date of the entry of this Interim Order, and subject to the terms of the DIP Documents, all collections and proceeds of any DIP Collateral and all Cash Collateral that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be (i) promptly deposited (and in any event within one (1) Business Day after receipt) into a deposit account maintained with a depositary bank reasonably satisfactory to the DIP Agent and (ii) to the extent that the Debtors maintain more than two (2) deposit accounts, swept, no later than the second (2nd) Business Day after receipt thereof, into one or more concentration accounts as identified in the DIP Agreement (collectively, the "<u>Cash Collection Account</u>"). Unless otherwise agreed to in writing by the DIP Agent, the Debtors shall maintain no accounts except those identified in the Cash Management Order [Docket No. ●] (the "<u>Cash Management Order</u>").

The Debtors and the financial institutions where the Debtors' Cash Collection Accounts are maintained (including those accounts identified in any Cash Management Order), are authorized to remit, without offset or deduction, funds in such Cash Collection Accounts upon receipt of any direction to that effect from the DIP Agent.

27.     <u>Maintenance of DIP Collateral</u>. Until the indefeasible payment in full of all DIP Obligations and the termination of the DIP Lenders' obligation to extend credit under the DIP Facility, the Debtors shall: (a) insure the DIP Collateral as required under the DIP Facility; and (b) maintain a cash management system acceptable to the DIP Agent in its sole discretion.

28.     <u>Disposition of DIP Collateral</u>. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral other than in the ordinary course of business without the prior written consent of the DIP Agent and DIP Lenders (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Agent or the DIP Lenders, or from any order of this Court), except as otherwise provided for in the DIP Documents or otherwise ordered by the Court.

29.     <u>Collateral Use and Access Rights</u>. Upon the occurrence of an Event of Default and subject to the expiration of the Remedies Notice Period, the DIP Agent, the DIP Lenders, and any agent or representative thereof (including any liquidator or other professional) has, at no cost or expense to the DIP Agent, the DIP Lenders or any of their agents or representatives, an irrevocable royalty free, rent free license and lease (which will be binding on any successor or assignee of the DIP Collateral) to use, access, license and sublicense any and all of the DIP Collateral to the extent necessary or reasonably required (as determined by the DIP Agent in its discretion) for the collection of all accounts and receivables of the Debtors, the sale or other disposition of inventory of the Debtors, the sale or other disposition of any other DIP

Collateral, in connection with any enforcement of its rights and remedies under the DIP Documents or this Interim Order, including in order for the DIP Agent or the Debtors (or their designees) to liquidate, dispose or sell (whether by public auction or private sale) the DIP Collateral or to otherwise exercise all remedies against or realize upon or sell the DIP Collateral, including pursuant to any Court approved sale process.

30.    <u>DIP Termination Date</u>. On the applicable DIP Termination Date (as defined herein), (a) all applicable DIP Obligations shall be immediately due and payable; (b) all commitments to extend credit under the applicable DIP Facility will terminate; (c) all accrued, unpaid Adequate Protection Interest and Adequate Protection Fees shall be immediately due and payable; and (d) all authority to use Cash Collateral shall cease other than as permitted in paragraph 10 during the Remedies Notice Period and paragraph 40 with respect to the Carve Out. For the purposes of this Interim Order, the "<u>DIP Termination Date</u>" shall mean the "Maturity Date" as defined in the DIP Agreement.

31.    <u>Events of Default</u>. The occurrence of any of the following events, unless waived by the DIP Agent in writing and in accordance with the terms of the DIP Agreement, shall constitute an event of default (collectively, the "<u>Events of Default</u>"): (a) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order, or (b) the occurrence of an "Event of Default" under the DIP Agreement.

32.    <u>Milestones</u>. As a condition to the DIP Facility and the use of Cash Collateral, the Debtors shall comply with the Required Milestones (as defined in, and set forth in Section 6.20 of the DIP Agreement). The failure of the Debtors to comply with any of the Required Milestones (as such may be amended, waived, modified or otherwise extended in

accordance with the DIP Agreement), if not amended, waived, modified or otherwise extended, (a) shall constitute an Event of Default under the DIP Agreement, and hereunder, (b) subject to the expiration of the Remedies Notice Period (as defined below), result in the automatic termination of the Debtors' authority to use Cash Collateral under this Interim Order, and (c) permit the DIP Agent, subject to paragraphs 33 and 34, to exercise the rights and remedies provided for in this Interim Order and the DIP Documents.

33.    <u>Rights and Remedies Upon Event of Default</u>.

(a)    Immediately upon the occurrence and during the continuation of an Event of Default under the DIP Documents or this Interim Order, notwithstanding the provisions of section 362 of the Bankruptcy Code, but subject to paragraph 34 of this Interim Order, without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Interim Order, the DIP Agent may declare (any such declaration shall be referred to herein as a "<u>Termination Declaration</u>,") (1) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (2) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (3) termination of the DIP Facility and the DIP Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, (4) that the application of the Carve Out has occurred through the delivery of the Carve Out Trigger Notice to the Borrowers; and (5) a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (the date which is the earliest to occur of any such date a Termination Declaration is delivered and the DIP Termination Date shall be referred to herein as the "<u>Termination Date</u>").

(b)     If (i) the Debtors fail to pay, on a timely basis, the Adequate Protection Fees, (ii) the Debtors do not obtain the consent of the Required Lenders with respect to a Budget, as required by Paragraph 19 hereof or (iii) any Challenge to any part of the Prepetition Secured Party Liens or Prepetition Secured Obligations is successful, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Interim Order (including any applicable grace periods), the Prepetition Secured Parties may withdraw their consent, subject to paragraph 29 herein, to the use of the Prepetition Collateral (and Cash Collateral arising from the Prepetition Collateral) and seek termination of the Debtors' right to use Prepetition Collateral for failure to provide adequate protection for use of the Prepetition Collateral.

(c)     Any Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to a Creditors' Committee (if appointed), and the U.S. Trustee.  The automatic stay in the Cases otherwise applicable to the DIP Agent and the DIP Lenders is hereby modified so that five (5) business days after the date a Termination Declaration is delivered (the "Remedies Notice Period"), but subject to paragraph 34 hereof, the DIP Agent and the DIP Lenders shall be entitled to exercise their rights and remedies in accordance with the DIP Documents and this Interim Order and shall be permitted to satisfy the DIP Obligations, DIP Superpriority Claim and DIP Liens; *provided, however*, that in the event the DIP Agent determines that there is an imminent threat of loss of DIP Collateral following any Termination Declaration (such as in the case of perishable inventory) nothing in this Interim Order shall impair the ability of, and the automatic stay is hereby modified to permit, the DIP Agent and the DIP Lenders to take reasonable and immediate action to preserve the

value of such DIP Collateral.  During the Remedies Notice Period, the Debtors and/or a Creditors' Committee (if appointed) shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court, provided that as to the Debtors, the sole issue that may be raised is whether an Event of Default has occurred and/or is continuing, and the Debtors hereby waive their right to and shall not be entitled to seek relief, including, without limitation, under Section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the DIP Agent or the DIP Lenders.  Unless the Court orders otherwise, the automatic stay, as to the DIP Agent and the DIP Lenders, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order.  Upon expiration of the Remedies Notice Period, the DIP Agent and the DIP Lenders shall be permitted to exercise all remedies set forth herein, in the DIP Documents and as otherwise available at law without further order of or application or motion to the Court.

34.    <u>Intercreditor Provisions</u>.

(a)    The DIP Agent shall have the exclusive right to take Enforcement Action (as defined below) with respect to the DIP Collateral with notice to, but without any consultation with or the consent of the Debtors or the Prepetition Secured Parties.  In connection with any such Enforcement Action, the DIP Agent may enforce the provisions of the DIP Documents and exercise remedies thereunder, all in such order and in such manner as it may determine in the exercise of its sole discretion.  Until the indefeasible payment in full in cash of the DIP Obligations or unless the DIP Agent otherwise consents, the Prepetition Secured Parties shall not exercise or seek to exercise any rights or remedies with respect to the DIP Collateral (including taking any Enforcement Action).

(b)    "Enforcement Action" means, with respect to the DIP Obligations or the Prepetition Secured Obligations, the exercise of any rights and remedies with respect to the DIP Collateral and/or Prepetition Collateral securing such obligations or the commencement or prosecution of enforcement of any of the rights and remedies under, as applicable, the DIP Documents, the Prepetition Loan Documents, or applicable law, including, without limitation the exercise of any rights of set-off or recoupment, and the exercise of any rights or remedies of a secured creditor under the Uniform Commercial Code of any applicable jurisdiction or under this Interim Order.

35.    Good Faith Under Section 363(m) and 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order.  The DIP Agent, the DIP Lenders and the Prepetition Secured Parties have acted in good faith in connection with this Interim Order and are entitled to rely upon the protections granted herein and by sections 363(m) and 364(e) of the Bankruptcy Code, as applicable. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with sections 363(m) and 364(e) of the Bankruptcy Code, as applicable, in the event any or all of the provisions of this Interim Order are hereafter reversed, modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties are entitled to the protections provided in sections 363(m) and 364(e) of the Bankruptcy Code, as applicable, to the maximum extent set forth therein.

36.    DIP and Other Expenses.  The Debtors are authorized to pay as provided in the DIP Documents, whether or not the transactions contemplated hereby are consummated, all reasonable and documented prepetition and post-petition fees and expenses of the DIP Agent and DIP Lenders in connection with the DIP Facility including attorneys' fees, monitoring and

appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses. Payment of all such fees and expenses shall not be subject to allowance by the Court. Professionals for the DIP Agent and DIP Lenders shall not be required to comply with the U.S. Trustee fee guidelines or to obtain Court approval of their fees and expenses; however, any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its fee and expense statements or invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute a waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee and counsel for a Creditors' Committee (if appointed) contemporaneously with the delivery of such fee and expense statements to the Debtors. Any objections raised by the Debtors, the U.S. Trustee or the Creditors' Committee (if appointed) with respect to such invoices within ten (10) days of the receipt thereof will be subject to resolution by the Court. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors. Notwithstanding the foregoing, the Debtors are authorized to pay on the Closing Date all reasonable and documented fees, costs and out-of-pocket expenses of the DIP Agent and the DIP Lenders incurred on or prior to such date without the need for any professional engaged by the DIP Agent or the DIP Lenders to first deliver a copy of its invoice as provided for herein. No attorney or advisor to the DIP Agent or any DIP Lenders shall be required to file an application seeking compensation for services for reimbursement of expenses with the Court.

37.    <u>Indemnification.</u>  Subject to entry of a Final Order, the Debtors shall indemnify and hold harmless the DIP Agent, the DIP Lenders and the other DIP Secured Parties in accordance with the terms and conditions of the DIP Documents.

38.    <u>Proofs of Claim.</u> The DIP Agent, the DIP Lenders and the Prepetition Secured Parties will not be required to file proofs of claim in any of the Cases or Successor Cases in respect of any of the DIP Obligations or the Prepetition Secured Obligations. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, the Prepetition Agent on behalf of the Prepetition Secured Parties, (i) is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a single, master consolidated proof of claim in respect of the applicable Prepetition Secured Obligations (including, without limitation, in respect of all guarantees by the Debtors of such Prepetition Secured Obligations) in Lead Case No. 19-11509 (___), which shall be deemed a valid proof of claim against each Debtor in its Case or its Successor Case and (ii) shall not be required to file any agreements, documents, or other instruments evidencing such Prepetition Secured Obligations with such single, master consolidated proof of claim.  Any proof of claim filed by the Prepetition Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition Secured Parties, respectively.  Any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases shall not apply to any claim of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties.

39.    <u>Rights of Access and Information.</u> Without limiting the rights of access and information afforded the DIP Agent under the DIP Documents and this Interim Order, as applicable, the Debtors shall be, and hereby are, required to afford representatives, agents and/or

employees of the DIP Agent (and, to the extent provided in the DIP Agreement, the DIP

Lenders) reasonable access to the Debtors' premises and their books and records in accordance

with the DIP Documents and this Interim Order, and shall reasonably cooperate, consult with,

and provide to such persons all such information as may be reasonably requested.  In addition,

the Debtors authorize their independent certified public accountants, financial advisors,

investment bankers and consultants, to cooperate, consult with, and provide to the DIP Agent

(and, to the extent provided in the DIP Agreement, the DIP Lenders) all such information as may

be reasonably requested with respect to the business, results of operations and financial condition

of any of the Borrowers or Guarantor.

       40.    <u>Carve Out</u>.

       (a)    As used in this Interim Order, the "<u>Carve Out</u>" means, subject, in

each case, to application of any retainers that may be held by the applicable professionals,

without duplication: (i) the payment of all unpaid professional fees and disbursements incurred

by the Debtors and any statutory committees appointed in the Cases pursuant to sections 327 and

1103 of the Bankruptcy Code (the "<u>Case Professionals</u>") at any time prior to the delivery of the

Carve Out Trigger Notice (as defined below) to the extent allowed by this Court (the "<u>Allowed</u>

<u>Professional Fees</u>"), but solely to the extent such professional fees and disbursements do not

exceed the amounts provided in the Budget in effect prior to the delivery of a Carve Out Trigger

Notice; (ii) after delivery of a notice by the DIP Agent to the Borrower that an Event of Default

has occurred and is continuing and the DIP Agent has delivered notice to the Debtors to the

effect that the application of the Carve Out has occurred (the "<u>Carve Out Trigger Notice</u>"), the

payment of allowed and unpaid professional fees and disbursements incurred by the Case

Professionals following the delivery of the Carve Out Trigger Notice in an aggregate amount not

in excess of (x) $250,000 plus (y) solely for the benefit of Configure Partners, LLC, an amount equal to any M&A Transaction Fee allowed by the Court and payable to Configure Partners, LLC, as a result of the closing of any Sale consented to by the DIP Agent, Prepetition Agent, and Required Lenders ((x) and (y), together, the "Wind-Down Carve Out Amount"), plus (iii) the payment of fees pursuant to 28 U.S.C. § 1930(a)(6) together with the statutory rate of interest, which fees shall not be limited to amounts that may be set forth in the Budget.  Notwithstanding the foregoing, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code or any other order entered by the Court, but solely to the extent the same do not exceed the professional fees and disbursements in the Budget in effect prior to the delivery of a Carve Out Trigger Notice, as the same may be due and payable and otherwise allowed and payable by order of the Court, and the same shall not reduce the Wind-Down Carve Out Amount.  Further, prior to the delivery of a Carve Out Trigger Notice, the Debtors are authorized to fund, on a weekly basis, a trust account held by the Debtors' counsel (the "Trust Account") up to the amounts set forth in the Budget for the sole purpose of paying the fees and expenses of the Case Professionals.  To the extent that the Trust Account is actually funded, the Carve Out shall be reduced by such funded amount. The Carve Out shall not be deemed increased if actual fees of Case Professionals are higher in fact than the amounts set forth in the Budget.  Any amounts in the Trust Account after the payment of all Allowed Professional Fees of Case Professionals shall be returned to the Debtors and shall be treated as DIP Collateral.

(b)      *No Direct Obligation to Pay Professional Fees.*  The DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in

connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

        41.    <u>Limitations on Use of DIP Proceeds, Cash Collateral and Carve Out</u>. The DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral and the Carve Out may not be used in connection with: (a) preventing, hindering, or delaying any of the DIP Agent's or the DIP Lenders' enforcement or realization upon any of the DIP Collateral; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral without the consent of the DIP Agent (acting at the direction of the DIP Lenders); (c) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agent; (d) incurring Indebtedness (as defined in the DIP Agreement) without the prior consent of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties, except to the extent permitted under the DIP Agreement or this Interim Order; (e) seeking to amend or modify any of the rights granted to the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties under this Interim Order, the DIP Documents, or the Prepetition Loan Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; (f) objecting to or challenging in any way the DIP Liens, DIP Obligations, Adequate Protection Liens, Adequate Protection Superpriority Claim, Prepetition Secured Party Liens, Prepetition Secured Obligations, DIP Collateral (including Cash Collateral) or, as the case may be, Prepetition Collateral (including Cash Collateral), or any other claims or liens, held by or on behalf of any of the DIP Agent, the other DIP Secured Parties, or the Prepetition Secured Parties, respectively; (g) asserting, commencing

or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; (h) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, the Prepetition Secured Party Liens, Prepetition Secured Obligations or any other rights or interests of any of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties; or (i) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations or the Prepetition Secured Obligations; *provided, however*, that the Carve Out and such collateral proceeds and loans under the DIP Documents may be used for allowed fees and expenses, in an amount not to exceed $25,000 in the aggregate, incurred solely by a Creditors' Committee (if appointed), in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition Secured Party Liens or Prepetition Secured Obligations within sixty (60) days following the selection of counsel to the Creditors' Committee (if any) (the "Limited Amount").

42.     Payment of Compensation. Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Professional Person or shall affect the right of the DIP Agent or the DIP Lenders to object to the allowance and payment of such fees and expenses.

43.    <u>Effect of Stipulations on Third Parties.</u>

(a)    *Generally.*  The admissions, stipulations, agreements, releases, and waivers set forth in this Interim Order (collectively, the "<u>Prepetition Lien and Claim Matters</u>") are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including, without limitation, a Creditors' Committee (if any) and any other official committee that may be appointed in these Cases, unless, and solely to the extent that, a party in interest with standing and requisite authority (other than the Debtors, as to which any Challenge (as defined below) is irrevocably waived and relinquished) (i) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules challenging the validity, priority, perfection, extent or enforceability of the Prepetition Secured Party Liens, Prepetition Secured Obligations or any other Prepetition Lien and Claim Matters, or asserting or prosecuting any claims, counterclaims, causes of action, objections, contests or defenses against the Prepetition Secured Parties (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "<u>Challenge</u>") by no later than (x) with respect to the Creditors' Committee (if appointed), sixty (60) calendar days after the selection of counsel to the Creditors' Committee, or (y) with respect to other parties in interest with requisite standing other than the Debtors or the Creditors' Committee, seventy-five (75) days after the Petition Date (the "<u>Challenge Deadline</u>"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition Secured Parties, or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge

Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal. Notwithstanding the foregoing, if a chapter 7 or 11 trustee is appointed prior to the expiration of the Challenge Deadline, he or she shall have until the later of the expiration of the Challenge Deadline or 10 days after the date of appointment to assert a Challenge, subject to extension by the Court for cause; and (b) that if the Creditors' Committee has asserted a Challenge prior to the Challenge Deadline, the Chapter 7 or 11 trustee will stand in the shoes of the Creditors' Committee in such Challenge.

(b)    *Binding Effect.* To the extent no Challenge is timely and properly commenced by the Challenge Deadline, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, (i) the Prepetition Secured Obligations shall constitute allowed claims, not subject to any Challenge (whether characterized as a counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by section 101(5) of the Bankruptcy Code), impairment, subordination (whether equitable, contractual or otherwise), or other Challenge of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law) and (ii) the stipulations, agreements, releases, and waivers with respect to Prepetition Secured Party Liens, the Prepetition Secured Obligations, the Prepetition Secured Parties and any other Prepetition Lien and Claim Matters shall, pursuant to this Interim Order, become binding, conclusive, and final on any person, entity, or party in interest in the Cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or

objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates. Notwithstanding anything to the contrary herein, if any such proceeding or Challenge is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above except to the extent that any of such Prepetition Lien and Claim Matters is specifically and expressly the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment, and any Challenge not brought in such proceeding or Challenge shall be forever barred; *provided* that if and to the extent any Challenges to any Prepetition Lien and Claim Matters are withdrawn, denied or overruled by a final non-appealable order, such Prepetition Lien and Claim Matters also shall be binding on the Debtors' estates and all parties in interest.

44.    No Third Party Rights. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

45.    Section 506(c) Claims. Subject to entry of a Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Agent, DIP Lenders or the Prepetition Secured Parties, or any of their respective claims, the DIP Collateral, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent, as applicable, of the DIP Agent, DIP Lenders or Prepetition Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

46.    No Marshaling/Applications of Proceeds. Subject to entry of a Final Order, the DIP Agent, DIP Lenders, and Prepetition Secured Parties shall not be subject to the

equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Interim Order and the DIP Documents notwithstanding any other agreement or provision to the contrary.

47.    Section 552(b). Subject to entry of a Final Order, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

48.    Access to DIP Collateral. Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agent, exercisable on behalf of the DIP Lenders, contained in this Interim Order, the DIP Documents or otherwise available at law or in equity, and subject to the terms of the DIP Documents and this Interim Order, upon written notice to the landlord of any leased premises that an Event of Default or the Termination Date has occurred and is continuing and subject to the expiration of the Remedies Notice Period (except in respect of an imminent threat of loss of DIP Collateral (such as in the case of perishable inventory)), the DIP Agent may, subject to the applicable notice provisions, if any, in this Interim Order and any separate applicable agreement by and between such landlord and the DIP Agent, enter upon any leased premises of the Debtors or any other party for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, *provided, however*, that the DIP Agent may only enter onto any

leased premises of any Debtor after an Event of Default in accordance with (i) a separate written agreement by and between the DIP Agent and any applicable landlords, (ii) non-bankruptcy law, or (iii) a further order of this Court after notice and a hearing, and *provided further* that nothing herein shall relieve the Debtors of their obligations under section 365(d)(3) of the Bankruptcy Code.  Nothing herein shall require the DIP Agent to assume any lease as a condition to the rights afforded in this paragraph.

49.    Limits on Lender Liability. Subject to entry of a Final Order, nothing in this Interim Order, any of the DIP Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders or the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Cases. The DIP Agent and the DIP Lenders shall not, solely by reason of having made loans under the DIP Facility be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.,* as amended, or any similar federal or state statute).  Nothing in this Interim Order or the DIP Documents, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

50.    Agent Consent. In any instance in this Interim Order where the Prepetition Agent is indicated as having given its consent, agreement, or authorization (to the extent such consent, agreement, or authorization is required), the Prepetition Agent shall be deemed to have

given its consent, agreement, or authorization at the instruction of the Required Lenders (as defined in the Prepetition Credit Agreement) and the Required Lenders shall be deemed to have given such instruction to the Prepetition Agent.  Nothing in this Interim Order shall be construed to limit or affect the Prepetition Agent's right to request instructions from the Required Lenders in accordance with the Prepetition Loan Documents.

51.    <u>Insurance Proceeds and Policies</u>. Upon entry of this Interim Order and to the fullest extent provided by applicable law, the DIP Agent (on behalf of the DIP Lenders) shall be, and shall be deemed to be, without any further action or notice, named as additional insured and lender's loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

52.    <u>Joint and Several Liability</u>. Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Borrowers and Guarantor shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Facility and the DIP Documents.

53.    <u>No Superior Rights of Reclamation or Return of Goods</u>. The rights of a seller to reclaim or return goods are not Permitted Prior Liens and in no event shall any alleged right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the Prepetition Secured Party Liens or the DIP Liens. The Debtors shall not, without the prior consent of the DIP Agent, return goods pursuant to section 546(h) of the Bankruptcy Code.

54.    <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly

or implicitly: (a) the DIP Agent's, the DIP Lenders' and the Prepetition Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP Agent, the DIP Lenders and/or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', a Creditors' Committee's (if appointed) or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Interim Order.  Entry of this Interim Order is without prejudice to any and all rights of any party in interest with respect to the terms and approval of the Final Order and any other position which any party in interest deems appropriate to raise in the Cases.

55.     <u>No Waiver by Failure to Seek Relief</u>. The failure of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties' to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent, DIP Lenders, the Prepetition Secured Parties, the Creditors' Committee (if appointed) or any party in interest.

56.     <u>Binding Effect of Interim Order</u>. Immediately upon execution by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, DIP Agent, DIP Lenders, Prepetition Secured Parties, all other creditors of any of the Debtors, any Creditors' Committee (or any other court appointed committee) appointed in the Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

57.     <u>No Modification of Interim Order</u>. Until and unless the DIP Obligations have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Agent and DIP Lenders, (i) any modification, stay, vacatur or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claim, other than the Carve Out; (b) without the prior written consent of the DIP Agent and DIP Lenders, any order allowing use of Cash Collateral (other than as permitted during the Remedies Notice Period) resulting from DIP Collateral or Prepetition Collateral; (c) without the prior written consent of the DIP Agent and DIP Lenders, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Documents or this Interim Order; or (d) without

the prior written consent of the Prepetition Agent and Prepetition Lenders, (i) any lien on any of the DIP Collateral with priority equal or superior to the Prepetition Secured Party Liens or Adequate Protection Liens, (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the Adequate Protection Claim, or (iii) modify any other adequate protection granted hereunder.    The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Interim Order without the prior written consent, as provided in the foregoing, of the DIP Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent.

58.    <u>Interim Order Controls</u>. In the event of any inconsistency between the terms and conditions of the DIP Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

59.    <u>Discharge</u>. Subject to entry of the Final Order, the DIP Obligations and the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or the DIP Agent or the Prepetition Agent, as applicable, has otherwise agreed in writing.    None of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment of the DIP

Obligations in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization or sale) (a "Prohibited Plan or Sale") without the written consent of the DIP Agent and the DIP Lenders. For the avoidance of doubt, the Debtors' proposal or support of a Prohibited Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder and under the DIP Documents.

60.    Survival. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases. The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the DIP Agent, DIP Lenders and Prepetition Secured Parties granted pursuant to this Interim Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until all the DIP Obligations, pursuant to the DIP Documents and this Interim Order, have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility are terminated. The terms and provisions concerning the indemnification of the DIP Agent, the other DIP Secured Parties and the Prepetition Secured Parties shall continue in the Cases, in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Documents and/or the indefeasible repayment of the DIP Obligations. In addition, the terms and provisions

of this Interim Order shall continue in full force and effect for the benefit of the Prepetition Secured Parties notwithstanding the repayment in full of or termination of the DIP Obligations.

     61.   <u>Final Hearing</u>. The Final Hearing to consider entry of the Final Order and final, approval of the DIP Facility is scheduled for **August** 7 **, 2019, at** 10:30 **a.m.**/p.m. **(EST)** before the Honorable John T. Dorsey, United States Bankruptcy Judge, in Courtroom 5, 5th Floor, at the United States Bankruptcy Court for the District of Delaware. Within two (2) business days hereof, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with copies of this Interim Order and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for a Creditors' Committee (if appointed); (d) the Securities and Exchange Commission; and (e) the Internal Revenue Service. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on July 31 **, 2019, at 4:00 p.m. (EST),** which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 North Market Street, Suite 1000, Wilmington, Delaware 19801, Attn: Domenic E. Pacitti (dpacitti@klehr.com) and Michael W. Yurkewicz (myurkewicz@klehr.com); (ii) counsel to the DIP Agent, Hunton Andrews Kurth LLP, 951 East Byrd Street, Richmond, Virginia 23219, Attn: Tyler P. Brown (tpbrown@huntonak.com) and Justin F. Paget (jpaget@huntonak.com); (iii) Delaware counsel to the DIP Agent, Gellert Scali Busenkell & Brown, LLC, 1201 N. Orange Street, Suite 300, Wilmington, DE 19801, Attn: Michael Busenkell (mbusenkell@gsbblaw.com) (iv) counsel to NXT, Goldberg Kohn, Ltd., 55 East Monroe, Suite 3300, Chicago, Illinois 60603, Attn: Randall

Klein (Randall.klein@goldbergkohn.com) and Prisca Kim (Prisca.kim@goldbergkohn.com); and

(v) counsel to the Office of the United States Trustee, 844 King Street, Suite 2207, LockBox 35,

Wilmington, Delaware 19801, Attn: Linda Richenderfer (linda.richenderfer@usdoj.gov); and

(iv) counsel to a Creditors' Committee (if appointed).

      62.    *Nunc Pro Tunc* Effect of this Interim Order. This Interim Order shall

constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall

take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution

thereof.

      63.    Retention of Jurisdiction. The Court has and will retain jurisdiction to

enforce the terms of, any and all matters arising from or related to the DIP Facility, and/or this

Interim Order.

      SO ORDERED by the Court this _9_ day of July, 2019.

                                         UNITED STATES BANKRUPTCY JUDGE