**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| RUI HOLDING CORP., *et al.*,[1] | ) ) ) | Case No. 19-11509 (JTD) |
| Debtors. | ) ) ) | Jointly Administered |
|  | ) ) | Related to Docket No. 15 |

**ORDER (A) APPROVING PROCEDURES IN CONNECTION WITH SALE OF DEBTORS' ASSETS; (B) SCHEDULING AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE; (C) APPROVING PROCEDURES RELATED TO ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVING FORM AND MANNER OF NOTICES THEREOF; AND (E) GRANTING RELATED RELIEF**

Upon the Motion of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for (I)(A) Approving Procedures in Connection With Sale of Debtors' Assets; (B) Scheduling Auction and Hearing to Consider Approval of Sale; (C) Approving Procedures Related to Assumption of Certain Executory Contracts and Unexpired Leases; (D) Approving Form and Manner of Notice Thereof; and (E) Granting Related Relief; and (II)(A) Authorizing Sale of Such Assets Pursuant to the Transaction Documents, Free and Clear of All Liens, Claims, Encumbrances and Other Interests; (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (C) Granting Related Relief [Docket No. 15]

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: RUI Holding Corp. (6192); RU Corp. (8259); Restaurants Unlimited, Inc. (8365); and Restaurants Unlimited Texas, Inc. (5733). The Debtors' headquarters and mailing address is: 411 First Ave. South, Suite 200, Seattle, WA 98104. The Debtors operate restaurants under the following names: Clinkerdagger; Cutters Crabhouse; Fondi Pizzeria; Henry's Tavern; Horatio's; Kincaid's; Maggie Bluffs; Manzana; Newport Seafood Grill; Palisade; Palomino; Portland City Grill; Portland Seafood Company; Scott's Bar and Grill; Simon & Seafort's; Skate's on the Bay; Stanford's; and Stanley & Seafort's.

(the "Motion");[2] and following the Motion, the Debtors have proposed entering into that certain Asset Purchase Agreement by and among Restaurants Unlimited, Inc., Restaurants Unlimited Texas, Inc., RU Corp. and Landry's, LLC, dated as of August 27, 2019 (the "Stalking Horse Agreement"), pursuant to which Landry's LLC (together with its permitted successors, designees and assigns) shall serve as the "Stalking Horse Purchaser" with respect to the Purchased Assets; upon the Court having reviewed the Motion, the First Day Declaration, the Stalking Horse Agreement and having heard the statements of counsel and evidence adduced with respect to the Motion at a hearing before the Court to consider the relief requested therein with respect to a Sale Procedures Order (the "Hearing"); and upon the Court having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) venue is proper in this district pursuant to 28 U.S.C. § 1409, (c) this is a core proceeding pursuant to 28 U.S.C. § 157(b) and (d) notice of the Motion and the Hearing was sufficient under the circumstances; and after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors; and good and sufficient cause having been shown;

IT IS HEREBY FURTHER FOUND AND DETERMINED THAT:

A.    The Debtors have demonstrated that, under the circumstances of these Chapter 11 Cases and in particular the circumstances surrounding the Purchased Assets, the Sale Procedures, as set forth in **Annex 1** attached hereto, (1) provide an appropriate process and timetable for the Debtors to utilize in pursuing sales of the Purchased Assets, (2) will promote the Debtors' efforts to maximize the value of their estates, and (3) are in the best interests of the Debtors' and their estates, creditors and other stakeholders.

---

[2]   Capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

B. For the reasons set forth in the Motion and at the Hearing, a prompt sale of the Purchased Assets, on the timetable set forth herein, provides the best available process under the circumstances to maximize the value of the Debtors' estates and is in the best interests of creditors.

C. The Sale Procedures are reasonably designed to maximize the value to be obtained from sales of the Purchased Assets.

D. The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court granting the relief requested in the Motion for a Sale Procedures Order, including approval of (1) the Sale Procedures; (2) the selection by the Debtors of Stalking Horse Purchaser; and (3) the form and manner of serving the Sale Notice and the Assignment Notice.

E. The Breakup Fee and Expense Reimbursement to be paid to the Stalking Horse Purchaser are reasonable and appropriate and were necessary to ensure that the Stalking Horse Purchaser would enter into the Stalking Horse Agreement and that the approval hereby is necessary to ensure that the Stalking Horse Purchaser will continue to pursue its proposed acquisition of the Purchased Assets and consummate the transactions contemplated by the Stalking Horse Agreement.

F. The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court scheduling the Sale Hearing to consider granting the sale relief requested in the Motion, including approval of sales and transfers of the applicable Purchased Assets to the Prevailing Bidder(s) at the Auction free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code and the

assumption and assignment of certain executory contracts and unexpired leases pursuant to 365 of the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED as modified and set forth herein with respect to the request for a Sale Procedures Order.

2. The Stalking Horse Agreement, in substantially the form attached hereto as **Exhibit A**, is hereby approved and the Debtors are hereby authorized to execute same.

3. The Sale Procedures, as set forth in **Annex 1** attached hereto and incorporated herein, are hereby approved in their entirety and shall govern all bids and other activities relating to sale of the Purchased Assets.  The Debtors are authorized to take any and all actions necessary or appropriate to implement the Sale Procedures.  In accordance with the Sale Procedures, the Debtors may determine, in the exercise of their business judgment and in consultation with the DIP Agent and the Pre-Petition Agent, to sell the Purchased Assets individually or in some combination.  The failure to specifically include or reference any particular provision of the Sale Procedures in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Procedures be authorized and approved in their entirety.

4. As further described in the Sale Procedures, the deadline for submitting a Qualified Bid (as such term is defined in the Sale Procedures) shall be **September 16, 2019 at 4:00 p.m., prevailing Eastern time** for the Purchased Assets (as such term is defined in the Sale Procedures) (the "Bid Deadline").

5. The Stalking Horse Purchaser, or their designee, shall be deemed a Qualified Bidder for all purposes under the Sale Procedures, and the bid submitted by the Stalking Horse Purchaser pursuant to the Stalking Horse Agreement shall be deemed to be a Qualified Bid for

all purposes under the Sale Procedures. If more than one Qualified Bid is received for the Purchased Assets prior to the Bid Deadline, the Debtors shall conduct an Auction (the "Auction").

6. The Auction shall be organized and conducted by the Debtors on **September 18, 2019 at 10:00 a.m., prevailing Eastern time**, at the office of Klehr Harrison Harvey Branzburg LLP, counsel to the Debtors, 1835 Market Street, Suite 1400, Philadelphia, Pennsylvania 19103, or such other time or such other place as the Debtors shall notify all Qualified Bidders, the U.S. Trustee, the DIP Agent, the Pre-Petition Agent, the Required Lenders, any official committee appointed in these Chapter 11 Cases, and any other parties by filing a notice of such other time and place with the Court.

7. The Qualified Bid that is deemed the Initial Highest Bid, determined as set forth above, shall be the first Qualified Bid to begin the Auction. The next Qualified Bid at the Auction shall be an amount equal to or greater than the Initial Highest Bid *plus* if the Stalking Horse Bid is the Initial Highest Bid, the amount of the approved Breakup Fee and Expense Reimbursement *plus* the Minimum Bid Increment (as defined below). Thereafter, the Auction will continue in the manner determined by the Debtors above; provided, however, (i) additional Bids must be Qualified Bids (except that subsequent Qualified Bids made at the Auction, although received from a Qualified Bidder that made a Qualified Bid prior to the Bid Deadline, need not be received by the Bid Deadline) and (ii) additional Qualified Bids exceed the amount of the prior Qualified Bid by $250,000.00 or such other increment as determined by the Debtors, in consultation with the DIP Agent, the Pre-Petition Agent and any official committee appointed in these Chapter 11 Cases, and announced at the start of or during the Auction (the "Minimum Bid Increment").

8. To be timely and eligible for consideration by the Court, any objections to the Sale and/or any component thereof (any such objection, a "Sale Objection") – other than an objection to the proposed assumption and assignment of the Potential Designated Contracts or to any proposed Cure Costs – must: (a) be in writing; (b) clearly specify the grounds for the objection; (c) conform to the Bankruptcy Rules and the Local Rules; and (d) be filed with the Court and served so as to be received by the following parties (collectively, the "Objection Notice Parties") by no later than **4:00 p.m., prevailing Eastern time, on September 16, 2019** (the "Sale Objection Deadline"): (a) the Debtors, Restaurants Unlimited, Inc., 411 1st Avenue S., Seattle, WA 98104, Attn: Jim Eschweiler, CEO and David Bagley, CRO; (b) proposed counsel to the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 North Market Street, Suite 1000, Wilmington, Delaware 19801, Attn: Domenic E. Pacitti (dpacitti@klehr.com) and Michael W. Yurkewicz (myurkewicz@klehr.com); (c) counsel to the DIP Agent and the Pre-Petition Agent, Hunton Andrews Kurth LLP, Riverfront Plaza East Tower, 951 East Byrd Street, Richmond, VA 23219, Attn: Tyler P. Brown (tpbrown@huntonak.com and Justin F. Paget (jpaget@huntonak.com) and Gellert Scali Busenkell & Brown, LLC, 1201 N. Orange Street, Suite 300, Wilmington, DE 19801, Attn: Michael Busenkell (mbusenkell@gsbblaw.com); (d) counsel to any statutory committee appointed in these cases; (e) counsel to NXT, Goldberg Kohn, Ltd., 55 East Monroe, Suite 3300, Chicago, Illinois 60603, Attn: Randall Klein (Randall.klein@goldbergkohn.com) and Prisca Kim (Prisca.kim@goldbergkohn.com); and (f) Office of The United States Trustee, 844 King Street, Suite 2207, Lock Box 35, Wilmington, Delaware 19801, Attn: Linda Richenderfer (linda.richenderfer@usdoj.gov).

9. The Court shall conduct (i) the Sale Hearing for the Purchased Assets on **September 23, 2019 at 1:30 p.m., prevailing Eastern time** (the "Sale Hearing"), at which

hearing the Court will consider (a) approval of the Sale to the Stalking Horse Purchaser or the Prevailing Bidder(s) and (b) objections, if any, to the proposed sale and the proposed assumption and assignment of the Potential Designated Contracts solely to the extent such objections are premised on the Prevailing Bidder's ability to provide adequate assurance of future performance thereunder.  The Sale Hearing may be adjourned or rescheduled without notice other than as stated on the record in Court or in an appropriate agenda letter.

10. The Contract Procedures are approved in all respects.

11. The Debtors shall file and serve on all Contract Counterparties, by **August 30, 2019** (the "Mailing Deadline"), the Assignment Notice (substantially in the form attached hereto as **Annex 3**) by U.S. First Class Mail on each Non-Debtor Counterparty whose executory contract or unexpired lease may be assumed and assigned to the Prevailing Bidder (the "Potential Designated Contracts").  With respect to unexpired leases, the Assignment Notice shall be served on the notice party at the notice address each as set forth in the applicable lease as well as on any counsel who has entered an appearance in these cases on behalf of such landlord. The Debtors shall attach to the Assignment Notice a list identifying the Non-Debtor Counterparties to the Potential Designated Contracts and the proposed Cure Costs under the Potential Designated Contracts as of the Petition Date.

12. At any time prior to (i) the closing of any sale transaction for the Purchased Assets, or (ii) in the case of Designation Rights Assets, October 31, 2019 (as applicable, the "Contract Designation Deadline"), the Prevailing Bidder may direct the Debtors to serve a notice excluding any of the Potential Designated Contracts on (i) the Non-Debtor Counterparty to such Potential Designated Contracts and (ii) all Objection Notice Parties other than the Debtors, indicating, by reasonably specific information, which Potential Designated Contracts have been

excluded, and stating that the Prevailing Bidder has excluded such Potential Designated Contracts.  Upon service of such notice, the executory contracts and/or unexpired leases referenced in such notice (x) shall no longer be considered Potential Designated Contracts; (y) shall not be deemed to be, or to have been, assumed or assigned; and (z) shall remain subject to assumption, rejection or assignment by the Debtors.  At any time prior to the Contract Designation Deadline, the Prevailing Bidder may also direct the Debtors to serve a notice to designate a Potential Designated Contract that had previously been excluded to be included and considered as a Potential Designated Contract, and require the Debtors to give not less than five (5) Business Days' notice to the Non-Debtor Counterparty to such Potential Designated Contracts of the Prevailing Bidder's proposed assumption and assignment thereof to the Prevailing Bidder.

13. Objections, if any, to (i) the proposed Cure Costs, (ii) the proposed assumption and assignment of the Potential Designated Contracts, or (iii) objections relating to whether applicable law excuses the Non-Debtor Counterparty from accepting performance by, or rendering performance to, the Prevailing Bidder for purposes of section 365(c)(1) of the Bankruptcy Code, must be in writing and filed with this Court and served on the Objection Notice Parties so as to be received no later than **4:00 p.m., prevailing Eastern time on September 16, 2019** (the "Cure/Assignment Objection Deadline").

14. Upon written request of Non-Debtor Counterparty to a Potential Designated Contract made prior to the expiration of the Adequate Assurance Objection Deadline (defined below), the Stalking Horse Purchaser and/or Debtors shall supply adequate assurance of future performance information as may be required by section 365 of the Bankruptcy Code with respect to the Stalking Horse Purchaser on a confidential basis to such requesting party within three (3)

business days of such request. Upon written request of Non-Debtor Counterparty to a Potential Designated Contract made prior to the expiration of the Adequate Assurance Objection Deadline (defined below), a Qualified Bidder, other than the Stalking Horse Purchaser, and/or Debtors shall supply adequate assurance of future performance information as may be required by section 365 of the Bankruptcy Code with respect to any Qualified Bidder other than the Stalking Horse Purchaser, on a confidential basis to such requesting party within twenty-four (24) hours of such request.

15. Objections, if any, to the adequate assurance of future performance with respect to the Stalking Horse Purchaser or with respect to any Qualified Bidder other than the Stalking Horse Purchaser must be in writing and filed with this Court and served on the Objection Notice Parties so as to be received no later than **4:00 p.m., prevailing Eastern time on September 20, 2019** (the "Adequate Assurance Objection Deadline" and together with the Cure/Assignment Objection Deadline, the "Contract Objection Deadlines").

16. Where a Non-Debtor Counterparty to a Potential Designated Contract files an objection meeting the requirements of paragraphs 13 and 16, objecting to the assumption by the Debtors and assignment to the Prevailing Bidder of such Potential Designated Contract (the "Disputed Designation") and/or asserting a cure amount higher than the proposed Cure Costs listed on the Assignment Notice (the "Disputed Cure Costs"), the Debtors and the Non-Debtor Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Court intervention. If the Debtors and the Non-Debtor Counterparty determine that the objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the Disputed Designation and/or the amount to be paid under section 365 of the Bankruptcy Code with respect to the Disputed Cure Costs will be determined by the Court at the

Sale Hearing, unless the Debtors, the Prevailing Bidder and the Non-Debtor Counterparty to the Potential Designated Contract in dispute agree otherwise or the Court orders otherwise.  If the Court determines at the Sale Hearing that the Potential Designated Contract will not be assumed and assigned, then such executory contract or unexpired lease shall no longer be considered a Potential Designated Contract.  If any objection related to a Disputed Designation or Disputed Cure Costs is continued beyond the Sale Hearing, the Prevailing Bidder shall escrow the portion of the Cure Costs at the Closing pending such resolution.

17. Any Non-Debtor Counterparty to a Potential Designated Contract who fails to timely file an objection to the proposed Cure Costs or the proposed assumption and assignment of a Potential Designated Contract by the Contract Objection Deadlines, as applicable, absent further order of the Court is deemed to have consented to such Cure Costs and the assumption and assignment of such Potential Designated Contract by the Debtor and to the Prevailing Bidder, and such party shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtors, their estates or the Prevailing Bidder.

18. If the Non-Debtor Counterparty to a Potential Designated Contract fails to timely object to the assumption and assignment of a Potential Designated Contract or the proposed Cure Cost relating thereto by the Contract Objection Deadlines, or upon the resolution of any timely objection by agreement of the parties or order of the Court approving an assumption and assignment, such Potential Designated Contract shall be deemed to be assumed by the Debtors and assigned to the Prevailing Bidder and the proposed Cure Cost related to such Potential Designated Contract shall be established and approved in all respects, subject to the conditions set forth in paragraph 19 below.

19. The Debtors' decision to assume and assign the Potential Designated Contracts is subject to Court approval and consummation of a sale transaction with a Prevailing Bidder. The Prevailing Bidder shall have no rights in and to a particular Potential Designated Contract, and the Non-Debtor Counterparty shall have no rights against a Prevailing Bidder, until such time as the particular Potential Designated Contract is assumed and assigned in accordance with the Contract Procedures.

20. Except as may otherwise be agreed to in an APA with a Prevailing Bidder or by the parties to a Potential Designated Contract, the defaults under the Potential Designated Contracts that must be cured in accordance with section 365(b) of the Bankruptcy Code shall be cured as follows: without any reduction of, or credit against, the amount of the Prevailing Bid, the Purchaser shall pay all Cure Costs relating to an assumed executory contract or unexpired lease within ten days after the later of (i) the closing date specified in the APA entered into with a Prevailing Bidder or (ii) the date on which such executory contract or unexpired lease is deemed assumed and assigned, in accordance with paragraphs 17 and 18 hereof.

21. The Stalking Horse Purchaser will serve as a "stalking horse" bid at the Auction and, as an actual and necessary cost and expense of preserving the value of the Debtors' estates, the Stalking Horse shall be entitled, in accordance with Section 5.3(b) of the Stalking Horse Agreement, to (i) a break-up fee in an amount of $1,116,000 (the "Break-Up Fee") and (ii) expense reimbursement of actual, necessary, documented out of pocket expenses up to an amount not to exceed $300,000 (the "Expense Reimbursement"). The Breakup Fee and the Expense Reimbursement are hereby approved as an allowed administrative expense claim in the Chapter 11 Cases, and, if triggered, shall be paid to the Stalking Horse Purchaser within three (3) Business Days following the closing of such sale to a third party, and shall be paid to Stalking

Horse Purchaser prior to the payment of the proceeds of such sale to any third party asserting a Lien on the Purchased Assets (and no Lien of any third party shall attach to the portion of the sale proceeds representing the Breakup Fee or the Expense Reimbursement).

22. Subject to Paragraph 10(a) of Exhibit 1 to the *Order Approving Stipulation (I) Authorizing and Directing Payment of PACA Trust Claims of Triple "B" Corp. D/B/A Charlie's Produce, Bix Produce Company, LLC and FreshPack Produce, Inc. and (II) Granting Related Relief* [Docket No. 125], the Pre-Petition Agent, on behalf of the Pre-Petition Lenders, and the DIP Agent, on behalf of the DIP Lenders, or their designee, shall be entitled to credit bid all or a portion of the outstanding obligations owing to the Pre-Petition Agent and/or DIP Agent by the Debtors in accordance with section 363(k) of the Bankruptcy Code and as directed by the Pre-Petition Lenders and DIP Lenders, as applicable, in accordance with the DIP Agreement, and nothing herein or in the Sale Procedures shall prejudice or impair such credit bid rights. For the avoidance of doubt, except as expressly set forth otherwise herein, every dollar of a credit bid shall be treated the same as a dollar from a cash bid. Each of the Pre-Petition Agent and the DIP Agent, or their designee, shall be deemed a Qualified Bidder for all purposes under the Sale Procedures, and any bid submitted by the Pre-Petition Agent and/or the DIP Agent, or its designee, irrespective of whether such bid is submitted by the Bid Deadline, shall be deemed to be a Qualified Bid for all purposes under the Sale Procedures. In the event the Purchased Assets are acquired in an alternative transaction by any secured lender pursuant to a credit bid authorized by the Bankruptcy Court, such secured lender shall be responsible for the payment of the Breakup Fee and the Expense Reimbursement in cash at a closing on such sale.

23. The form of the Sale Notice attached hereto as **Annex 2** is hereby approved in all respects. By the Mailing Deadline, the Debtors shall serve a copy of this Order, the Sale Notice

and the Motion by U.S. mail upon: (a) counsel to the DIP Agent and Pre-Petition Agent; (b) counsel to NXT; (c) counsel to any official committee appointed in these Chapter 11 Cases; (d) any party that expressed in writing to the Debtors an interest in acquiring the Assets; (e) non-Debtor counterparties to all Potential Designated Contracts; (f) all parties who are known to assert liens upon the Assets; (g) the Internal Revenue Service and applicable state and local taxing authorities; (h) the attorneys general for the State of Delaware and for each state in which the Debtors operate a business; (i) the U.S. Trustee; and (j) all entities that have requested notice in these Chapter 11 Cases under Bankruptcy Rule 2002.

24. Unless the Court orders otherwise, the failure of any objecting person or entity to timely file and serve a Sale Objection as set forth herein shall be a bar to the assertion of any objection to the consummation and performance of any sale contemplated by the Stalking Horse Agreement or any alternative sale with a Prevailing Bidder, including the transfer free and clear of all Claims asserted against each of the Purchased Assets transferred as part of such sale.

25. Notwithstanding anything to the contrary herein, the Debtors, in the exercise of their discretion, shall retain the right under the Sale Procedures to make non-material modifications to the Sale Procedures, including without limitation extending any deadlines thereunder, if such modification is determined by the Debtors in the reasonable exercise of its business judgment, in consultation with the DIP Agent, the Pre-Petition Agent, the Required Lenders and any official committee appointed in these Chapter 11 Cases and upon notice to the U.S. Trustee, to be in the best interests of the estates and to enhance the likelihood of maximizing the sale value of the Purchased Assets. Any issue with respect to material modifications to the Bid Procedures may be addressed either by separate motion or at the Sale Hearing. To the extent any of the deadlines set forth in the Sale Procedures Order or the Sale

Procedures are extended, or any other provisions of the Sale Procedures are materially modified or cancelled, the Debtors shall file and serve a copy of such notice with the Bankruptcy Court; provided that, nothing herein shall modify any notice requirements under the applicable Bankruptcy Rules and the Local Rules with respect to any motion to sell the Purchased Assets and any hearing on such motion.

26. The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Order shall be effective immediately upon its entry.

27. The requirements of Local Rule 6004-1 are waived with respect to the Motion to the extent applicable.

28. The Debtors are authorized and empowered to take such steps, expend such sums of money and do such other things as may be necessary or appropriate to implement the relief granted herein.

29. The Court shall retain jurisdiction over any matter or disputes arising from or relating to the interpretation, implementation or enforcement of this Order.

Dated: August 28th, 2019  
Wilmington, Delaware

JOHN T. DORSEY  
UNITED STATES BANKRUPTCY JUDGE

PHIL1 7976283v.17