**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| RUI HOLDING CORP., *et al.*,[1] | Case No. 19-11509 (JTD) |
| Debtors. | Jointly Administered |
| | Related to Docket Nos. 15, 169, 171, 172 |

**ORDER (A) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF ASSETS OF THE DEBTORS OUTSIDE THE ORDINARY COURSE OF BUSINESS, (B) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (C) AUTHORIZING THE ASSUMPTION AND SALE AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (D) GRANTING RELATED RELIEF**

Upon the Motion of the above captioned debtors and debtors in possession (collectively, the "Debtors" or "Sellers") (I)(A) Approving Procedures in Connection With Sale of Debtors' Assets; (B) Scheduling Auction and Hearing to Consider Approval of Sale; (C) Approving Procedures Related to Assumption of Certain Executory Contracts and Unexpired Leases; (D) Approving Form and Manner of Notice Thereof; and (E) Granting Related Relief; and (II)(A) Authorizing Sale of Such Assets Pursuant to the Transaction Documents, Free and Clear of All Liens, Claims, Encumbrances and Other Interests; (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (C) Granting Related Relief [Docket No. 15] (the "Sale Motion"); and following the filing of the Sale Motion, the Debtors negotiated that certain Asset Purchase Agreement by and among

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: RUI Holding Corp. (6192); RU Corp. (8259); Restaurants Unlimited, Inc. (8365); and Restaurants Unlimited Texas, Inc. (5733). The Debtors' headquarters and mailing address is: 411 First Ave. South, Suite 200, Seattle, WA 98104. The Debtors operate restaurants under the following names: Clinkerdagger; Cutters Crabhouse; Fondi Pizzeria; Henry's Tavern; Horatio's; Kincaid's; Maggie Bluffs; Manzana; Newport Seafood Grill; Palisade; Palomino; Portland City Grill;

Restaurants Unlimited, Inc., Restaurants Unlimited Texas, Inc., RU Corp. and Landry's, LLC, dated as of August 27, 2019 (as amended by the First Amendment to Asset Purchase Agreement dated September 23, 2019, the Second Amendment to Asset Purchase Agreement dated September 24, 2019, and as may be further amended or otherwise modified from time to time and including all related instruments, documents, exhibits, schedules, and agreements thereto, collectively, the "Agreement"), a copy of which are collectively attached hereto as Exhibit A;[2] and pursuant to this Court's *Order (A) Approving Procedures in Connection with Sale of Debtors' Assets; (B) Scheduling Auction and Hearing to Consider Approval of Sale; (C) Approving Procedures Related to Assumption of Certain Executory Contracts and Unexpired Leases; (D) Approving Form and Manner of Notices Thereof; and (E) Granting Related Relief* [Docket No. 169] (the "Sale Procedures Order"), the Court having authorized the Debtors to enter into the Agreement with Landry's, LLC ("Buyer") pursuant to which Buyer (together with its permitted successors, designees and assigns) agreed to serve as the "Stalking Horse Purchaser" with respect to the Purchased Assets, free and clear of all Liens (as defined below), with such sale to be in accordance with the terms and conditions of the Agreement; and the Sale Procedures Order having authorized the Debtors to conduct, and approving the terms and conditions of, an auction as set forth in the Sale Procedures Order (the "Auction") to consider higher or otherwise better offers for the Purchased Assets, establishing a date for the Auction, and approving, among other things: (i) certain Sale Procedures (the "Sale Procedures") to be used in connection with the Auction; (ii) the form and manner of notice of the Auction and Sale

---

Portland Seafood Company; Scott's Bar and Grill; Simon & Seafort's; Skate's on the Bay; Stanford's; and Stanley & Seafort's.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement or Sale Motion, as applicable.

Procedures; (iii) procedures relating to certain unexpired leases and executory contracts, including notice of proposed cure amounts; and (iv) the Breakup Fee and the Expense Reimbursement; and the Court having established the date of the hearing on the Sale Motion (the "Sale Hearing"); and the Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and in consideration of the Sale Motion, the relief requested therein, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in these chapter 11 cases, including the Sale Motion, the certificates of service regarding the Sale Motion [Docket Nos. 51, 163 and 183], and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their stakeholders and all other parties in interest; and after due deliberation and sufficient cause appearing therefore;

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[3]

A.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.  The Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Purchased Assets to be sold, transferred, or conveyed pursuant to the

PHIL1 8226725v.12

Agreement, pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2).  Venue of these chapter 11 cases and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.   This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein and the closing of all transactions contemplated hereby without regard to any stay or delay in its implementation.

E.   The statutory bases for the relief requested in the Sale Motion and for the approvals and authorizations herein are (i) Sections 102, 105, 363 and 365 of the Bankruptcy Code, and (ii) Bankruptcy Rules 2002, 6004, 6006, and 9014.

F.   On July 7, 2019 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued in possession and management of their businesses and properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

G.   As evidenced by the certificates of service filed with the Court [Docket Nos. 51, 163 and 183], proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, and the Sale Hearing have been provided in accordance with Sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, 9007, 9008, and 9014, the local rules of the Court, the procedural due process requirements of the United States Constitution, and in

---

[3]   All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are incorporated herein to the extent not inconsistent herewith.

compliance with the Sale Procedures Order.  The Debtors also gave due and proper notice of the potential assumption, sale, and assignment of each contract or lease listed on the notice of assumption, sale, and assignment of designated unexpired leases and executory contracts filed on August 29, 2019 [Docket No. 172] (the "Assumed Contracts") to each non-debtor party under each such Assumed Contract.  Such notice was good and sufficient and appropriate under the particular circumstances.   No other or further notice of the Sale Motion, the Auction, the Sale Hearing, the assumption and assignment of the Assumed Contracts, or of the entry of this Order is necessary or shall be required.

H.  A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities, including, without limitation, (i) all entities that claim any interest in or lien upon the Purchased Assets, (ii) all non-debtor parties to Assumed Contracts assumed and sold and assigned pursuant to this Order, (iii) all governmental taxing authorities that have, or as a result of the sale of the Purchased Assets may have, Claims, contingent or otherwise, against the Debtors, (iv) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002, (v) all creditors (whether their Claims are liquidated, contingent, or unmatured) of the Debtors, (vi) all interested governmental, pension and environmental authorities, (vii) the Office of the United States Trustee for the District of Delaware, and (viii) all entities that heretofore expressed to the Debtors a serious interest in purchasing the Purchased Assets.  Other parties interested in bidding on the Purchased Assets were provided, pursuant to the Sale Procedures Order, sufficient information to make an informed judgment on whether to bid on the Purchased Assets.

PHIL1 8226725v.12

I.    The Purchased Assets and the NewCo Stock (as defined below)[4] are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

J.    The Debtors have demonstrated a sufficient basis and the existence of reasonable and appropriate circumstances requiring them to enter into the Agreement, sell or transfer the Purchased Assets and/or the NewCo Stock and assume and assign the Assumed Contracts, to Buyer and/or NewCo, as applicable, under Sections 363 and 365 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and their stakeholders.

K.    The Sale Procedures set forth in the Sale Procedures Order were non-collusive, substantively and procedurally fair to all parties.

L.    The Debtors and their professionals have complied, in good faith, in all respects with the Sale Procedures Order.  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Sale Procedures Order, the Debtors (a) afforded interested potential purchasers a full, fair, and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase all of the Debtors' assets, (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets, and (c) considered any bids submitted on or before the deadline to submit bids as set forth in the Sale Procedures (the "Bid Deadline").

---

[4]    Any reference to the transfer of the NewCo Stock in this Order shall be applicable only to the extent Buyer elects to have the Debtors transfer some or all of the Purchased Assets to NewCo pursuant to Section 9.21 of the Agreement.  To the extent Buyer elects to purchase NewCo Stock, the NewCo Stock shall be included as a Purchased Asset.

M. Buyer has certain rights to assign its rights and obligations in accordance with <u>Section 9.6</u> of the Agreement.  To the extent Buyer effects one or more assignments pursuant to <u>Section 9.6</u> of the Agreement, the assignees shall be the "Buyer" hereunder.

N. No Qualified Bids were received by the Debtors prior to expiration of the Bid Deadline other than by the Buyer and on September 17, 2019 the Debtors filed the *Notice of Cancellation of Auction and Designation of Stalking Horse Purchaser as the Purchaser in Connection with the Sale of Substantially All of the Debtors' Assets* [Docket No. 208].  Buyer submitted the highest or otherwise best offer for the Purchased Assets in accordance with the Sale Procedures Order.  The Sale Procedures obtained the highest value for the Purchased Assets for the Debtors and their estates.

O. The offer of Buyer, upon the terms and conditions set forth in the Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Agreement, (i) is the highest or best offer received by the Debtors, (ii) is fair and reasonable, (iii) is in the best interests of the Debtors' stakeholders and estates, (iv) constitutes full and fair consideration and reasonably equivalent value for the Purchased Assets and/or the NewCo Stock, and (v) will provide a greater recovery for the Debtors' creditors, and other interested parties than would be provided by any other practically available alternative.

P.  Buyer is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code and the decisions thereunder.  Buyer is a purchaser in "good faith," as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Section 363(m) and (n) of the Bankruptcy Code with respect to all of the Purchased Assets and/or the NewCo Stock.  The Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud of any kind.  Neither the Debtors

7

nor Buyer have engaged in any conduct that would prevent the application of Section 363(m) of the Bankruptcy Code or cause the application of, or implicate, Section 363(n) of the Bankruptcy Code to the Agreement or to the consummation of the sale transaction and transfer of the Purchased Assets, the NewCo Stock, and Assumed Contracts to Buyer and/or NewCo.  Buyer is purchasing the Purchased Assets (including the Assumed Contracts) and/or the NewCo Stock in good faith and is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and is, therefore, entitled to the protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (i) Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets, (ii) Buyer complied with the provisions in the Sale Procedures Order, (iii) all consideration to be paid by Buyer and other agreements or arrangements entered into by Buyer in connection with the sale have been disclosed, (iv) Buyer has not violated Section 363(n) of the Bankruptcy Code by any action or inaction, and (v) the negotiation and execution of the Agreement and any other agreements or instruments related thereto were in good faith.

Q.  The Debtors have full corporate power and authority to execute the Agreement (and all other documents contemplated thereby) and consummate the transactions contemplated therein, and the sale or transfer of the Purchased Assets and sale of the NewCo Stock has been duly and validly authorized by all necessary corporate actions on the part of the Debtors.  No consents or approvals, other than as may be expressly provided for in the Agreement, are required by the Debtors to consummate such transactions.

R.    The Debtors have advanced sound business reasons for seeking to enter into the Agreement and to sell and/or assume and sell and assign the Purchased Assets and/or the NewCo Stock, as more fully set forth in the Sale Motion and Agreement and as demonstrated at the

8

Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell and/or assume and sell and assign the Purchased Assets and/or the NewCo Stock and to consummate the transactions contemplated by the Agreement.  With the exception of Liquor Licenses (as defined in the Agreement), notwithstanding any requirement for approval or consent by any person, the transfer of the Purchased Assets to Buyer or NewCo, as applicable, and/or the sale of the NewCo Stock to Buyer and the assumption and assignment of the Assumed Contracts is a legal, valid, and effective transfer of the Purchased Assets (including the Assumed Contracts) and the NewCo Stock.

S.   The terms and conditions of the Agreement, including the consideration to be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the transactions contemplated by the Agreement and reflected in this Order are in the best interests of the Debtors' estates.

T.   Other than the Assumed Liabilities, the Purchased Assets and/or the NewCo Stock shall be sold free and clear of any and all liens (statutory or otherwise, including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), hypothecations, encumbrances, security interests, mortgages, debts, levies, indentures, pledges, restrictions (whether on voting, sale, transfer, disposition or otherwise), charges, instruments, preferences, priorities, security agreements, conditional sales agreements, title retention contracts, options, Claims, judgments, offsets, rights of recovery, rights of pre-emption, rights of first refusal or other third party rights, Claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, or Tax (including Claims for any and all foreign, federal, state and local Taxes), decrees of any court or foreign or domestic governmental entity, orders of any Governmental Authority, of any kind or nature (including

9

(i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security device, and (iii) any Claim based on any theory that either Buyer or NewCo is a successor or a continuation of the Debtors or the Debtors' business), reclamation Claims, Claims under the Perishable Agricultural Commodities Act of 1930 (as amended, "PACA") and state statutes of similar effect (together, the "PACA Claims"), Claims under the under the Packers and Stockyards Act of 1921 (as amended, "PASA" and any Claims thereunder the "PASA Claims"), obligations, liabilities, demands, and guaranties, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including Claims otherwise arising under doctrines of successor liability (collectively, the "Liens"), other than the Permitted Liens.  The Debtors have satisfied, or provided for, any and all PACA Claims and PASA Claims and the Purchased Assets are being transferred free and clear of any trusts provided for in PACA or PASA.

U. The Liens (other than the Permitted Liens, as defined in the Agreement and hereinafter, the "Permitted Liens") shall attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as before the closing of the transactions contemplated by the Agreement (the "Closing"), and Buyer would not enter into the Agreement to purchase the Purchased Assets or proceed to the Closing otherwise.

V.  The transfer of the Purchased Assets to Buyer and/or NewCo, as applicable, and the transfer of the NewCo Stock to Buyer under this Agreement and the Order will be a legal, valid, and effective transfer of the Purchased Assets and the NewCo Stock and shall vest Buyer or NewCo, as applicable, with all right, title, and interest of the Debtors to the Purchased Assets (and vests or will vest Buyer with all right, title and interest of the Debtors to the NewCo Stock) free and clear of any and all Liens (other than the Permitted Liens).  Except as specifically provided in the Agreement or this Order, Buyer shall not assume or become liable for any Liens (other than the Permitted Liens) relating to the Purchased Assets and/or the NewCo Stock being sold by the Debtors.

W. The transfer of the Purchased Assets to Buyer and/or NewCo, as applicable, and the transfer of the NewCo Stock to Buyer free and clear of all Liens (other than the Permitted Liens) will not result in any undue burden or prejudice to any holders of any Liens, because all such Liens of any kind or nature whatsoever shall attach to the net proceeds of the sale of the Purchased Assets and/or NewCo Stock received by the Debtors in the order of their priority, with the same validity, force, and effect which they now have as against the Purchased Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto. All persons having Liens of any kind or nature whatsoever against or in any of the Debtors, the Purchased Assets and/or the NewCo Stock shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Liens (other than the Permitted Liens) against Buyer or NewCo, or any of their respective assets, property, successors or assigns, the Purchased Assets and/or the NewCo Stock.

X.  The Debtors may sell the Purchased Assets and/or the NewCo Stock free and clear of all Liens of any kind or nature whatsoever (other than the Permitted Liens) because, in each case,

one or more of the standards set forth in Section 363(f) of the Bankruptcy Code has been satisfied.  In the case of the Liens of the DIP Lenders and the Prepetition Lenders, those parties are providing their consent to the transactions contemplated by the Agreement and this Order, pursuant to Section 363(f)(2) of the Bankruptcy Code, in accordance with a consent agreement, between the Debtors, the DIP Agent and the Prepetition Agent, which consent agreement contemplates immediate application of the net proceeds of sale to the payment of the balance owed by the Debtors on the DIP Facility and payment of a portion of the balance owed on the Prepetition Facility, all in accordance with such consent agreement.  Those (i) holders of Liens and (ii) non-debtor parties to the Assumed Contracts, who did not object, or who withdrew their objections, to the sale of the Purchased Assets and the Sale Motion are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code.  Except as set forth below, all objections to the Sale Motion, including objections by non-debtor parties to the Assumed Contracts, have been overruled or resolved.  Those holders of Liens who did object fall within one or more of the other subsections of Section 363(f) of the Bankruptcy Code and are adequately protected by having their Liens, if any, attach to the proceeds of the sale of the Purchased Assets ultimately attributable to the property against or in which they claim or may claim any Liens, with such Liens being subject to treatment as prescribed in the Debtors' chapter 11 plan or by separate order of this Court.

Y.  Not selling the Purchased Assets and/or the NewCo Stock free and clear of all Liens (other than the Permitted Liens) would adversely impact the Debtors' estates, and the sale of Purchased Assets and/or the NewCo Stock other than one free and clear of all Liens (other than the Permitted Liens) would be of substantially less value to the Debtors' estates.

Z.    The Debtors and Buyer have, to the extent necessary, satisfied the requirements of Section 365 of the Bankruptcy Code, including Subsections 365(b)(1)(A), (B) and 365(f), in connection with the sale and the assumption and assignment of the Assumed Contracts.  Buyer and/or NewCo has demonstrated adequate assurance of future performance with respect to the Assumed Contracts pursuant to Section 365(b)(1)(C) of the Bankruptcy Code.

AA.    Buyer is an established and substantial company that has decades of experience in managing operations of this type through its subsidiaries.  Its brands extend across all ranges of the casual and fine dining market.  Its operations and its need to ensure and protect its reputation against default together with its track record of operating profitably provides counterparties with a level of adequate assurance of future performance and protection against subsequent default under the Assumed Contracts that meets the requirements of Section 365 of the Bankruptcy Code.  The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtors, their estates, their stakeholders and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.

BB.    The Assumed Contracts are assignable notwithstanding any provisions contained therein to the contrary.  The Buyer shall have sole responsibility for paying all Cure Costs required to assume and assign the Assumed Contracts to Buyer or NewCo, as applicable.  Pursuant to Section 2.7 of the Agreement, Buyer shall maintain certain rights to modify the list of Assumed Contracts after the date of this Order and up to October 31, 2019 as set forth in such section.  Such modification rights include, but are not limited to, the right of Buyer, prior to the applicable Contract Designation Deadline, to designate certain Designation Rights Assets for assumption by the Debtors and assignment to Buyer.  Buyer would not have agreed to the

13

transactions set forth in the Agreement without such modification rights.  The notice and opportunity to object provided to the contract counterparties to such contracts and to other parties in interest, as set forth in the Sale Procedures Order and Agreement, fairly and reasonably protects any rights that such contract counterparties and other parties in interest may have with respect to such contracts.

CC.    Pursuant to <u>Section 2.9(a)(v)</u> of the Agreement, the Debtors are further required to enter into the Management Agreement in substantially the form set forth as Exhibit F to the Agreement.  Buyer would not have agreed to the transactions set forth in the Agreement without the Debtors' entry into the Management Agreement.

DD.    The notice and opportunity to object provided to the Debtors' parties in interest, as set forth in the Sale Procedures Order and Agreement, fairly and reasonably protects any rights of any party in interest.

EE.Buyer will be acting in good faith, pursuant to Section 363(m) of the Bankruptcy Code, in closing the transactions contemplated by the Agreement at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

FF.The transactions contemplated under the Agreement do not amount to a consolidation, merger, or *de facto* merger of Buyer and/or NewCo, on the one hand, and the Debtors and/or the Debtors' estates, on the other, there is not substantial continuity between Buyer and/or NewCo, on the one hand, and the Debtors, on the other, there is no continuity of enterprise between the Debtors and either the Buyer or NewCo, neither of Buyer or NewCo is a mere continuation of the Debtors or their estates, and neither of Buyer or NewCo is a successor to the Debtors or their estates.

PHIL1 8226725v.12

GG.  The total consideration provided by Buyer for the Purchased Assets and/or the NewCo Stock was the highest or best offer received by the Debtors, and the Purchase Price and other consideration under the Agreement, including the assumption of the Assumed Liabilities, constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Purchased Assets and/or the NewCo Stock.

HH.    Time is of the essence in consummating the sale.  In order to maximize the value of the Purchased Assets, it is essential that the sale of the Purchased Assets and/or the NewCo Stock occur within the time constraints set forth in the Agreement.  Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

II.    At and effective as of the Closing, Buyer, or in Buyer's discretion, NewCo, shall assume sole responsibility for paying and satisfying the Assumed Liabilities, including all liabilities and obligations of Sellers related to or arising under the Assumed Contracts.  For the avoidance of doubt, nothing in this Order (including, without limitation, any provisions in this Order regarding the sale, transfer or conveyance of the Purchased Assets and/or the NewCo Stock free and clear of Liens) nor in the Agreement shall be construed to mean that Buyer is not assuming from the Debtors and thereafter becoming solely responsible for the payment, performance and discharge of the Assumed Liabilities.  After the Closing and upon payment of the applicable Cure Costs, if any, the Debtors shall have no liability whatsoever with respect to the Assumed Liabilities.  Except as set forth in the Agreement, the Management Agreement, the Assignment and Assumption Agreement, each Single Location Assignment and this Order, Buyer

shall have no obligations with respect to any liabilities of the Debtors other than the Assumed Liabilities, including Cure Costs. Without otherwise limiting the foregoing, as set forth in the Agreement, Buyer shall have no liability for gift card obligations of Sellers as of the Closing Date for any amount exceeding $4,100,000.00.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The relief requested in the Sale Motion is granted in its entirety and the Agreement is approved, subject to the terms and conditions contained herein.

2.      Except as set forth in paragraphs 49 and 53 of this Order, all objections, responses, reservations of rights, and requests for continuance concerning the Sale Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing.   To the extent any such objection, response, reservation of rights, or request for continuance was not otherwise withdrawn, waived, or settled, it is overruled and denied on the merits.

3.      Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004, and 6006.

4.      The sale of the Purchased Assets and/or the NewCo Stock, the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto), and the transactions contemplated thereby shall be, and hereby are, authorized and approved in all respects, and shall be enforceable against each of the Parties thereto.

5.      The sale of the Purchased Assets and/or the NewCo Stock and the consideration provided by Buyer under the Agreement are fair and reasonable and shall be deemed for all

purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

6.        Buyer is hereby granted and is entitled to all the protections provided to a good faith purchaser under Section 363(m) of the Bankruptcy Code, including with respect to the transfer of the Assumed Contracts as part of the sale of the Purchased Assets and/or the NewCo Stock pursuant to Section 365 of the Bankruptcy Code and this Order.

7.        The Debtors shall be, and hereby are, authorized and directed to fully assume, perform under, consummate, and implement the terms of the Agreement together with any and all additional instruments and documents that may be necessary or desirable in connection with implementing and effectuating the terms of the Agreement, this Order, and/or the sale of the Purchased Assets and/or the NewCo Stock, including, without limitation, the Management Agreement, certificates, deeds, assignments, and other instruments of transfer, and to take all further actions as may reasonably be requested by Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to Buyer or NewCo, as applicable, or reducing to possession, any or all of the Purchased Assets, the NewCo Stock or Assumed Liabilities, as may be necessary or appropriate to the performance of the Debtors' obligations in accordance with the Agreement, without any further corporate action or orders of this Court.

8.        The Debtors and each other person or entity having duties or responsibilities under the Agreement, any agreements or instruments related thereto or this Order, and their respective directors, officers, managers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the Agreement and this Order, to carry out all of the provisions of the Agreement and any related agreements or instruments; to issue, execute, deliver, file, and record, as appropriate, the

17

documents evidencing and consummating the Agreement and any related agreements or instruments; to take any and all actions contemplated by the Agreement, any related agreements or instruments, or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary, desirable or appropriate to implement, effectuate, and consummate, the Agreement, any related agreements or instruments, and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court or further action by their respective directors, officers, managers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, managers, employees, members, agents, representatives, and attorneys of such entities. The secretary or any assistant secretary of the Debtors shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable). The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable Governmental Authority any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement, any related agreements and this Order, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable Governmental Authorities or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the

18

generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporate laws of the states of formation of each Debtor and all other applicable business, corporation, trust, and other laws of the applicable Governmental Authorities with respect to the implementation and consummation of the Agreement, any related agreements or instruments and this Order, and the transactions contemplated thereby and hereby.

9.       The Debtors' creation of new subsidiaries (each and collectively, "NewCo") pursuant to the terms of the Agreement, which are legal entities formed in a jurisdiction determined by Buyer in Buyer's sole discretion, shall be and hereby is authorized and approved. Contemporaneously with the Closing of the transactions contemplated by the Agreement to occur on the Closing Date, and thereafter with respect to any Designation Rights Asset as contemplated in the Agreement, the Debtors may transfer all of the Purchased Assets, or such portion of the Purchased Assets as Buyer may direct, to NewCo free and clear of Liens pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code except as expressly permitted or otherwise specifically provided for in the Agreement or this Order, assume and assign each of the Assumed Contracts, as Buyer may direct, to NewCo, and NewCo may assume some or all of the Assumed Obligations, to the extent directed by Buyer, and, in consideration therefore, the Debtors shall receive 100% of the equity ownership of each NewCo (the "NewCo Stock") which NewCo Stock shall be transferred to Buyer as directed by Buyer.  Buyer shall assume all of the Assumed Obligations not assumed by NewCo.

10.       To the fullest extent permitted by law, effective as of the Closing, (a)(i) the transfer of any Purchased Assets to NewCo, and (ii) the sale of the Purchased Assets and/or the NewCo Stock by the Debtors to Buyer, shall constitute a legal, valid, and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any Person and

shall vest Buyer or NewCo, as applicable, with all right, title, and interest of the Debtors in and

to the Purchased Assets and/or the NewCo Stock, free and clear of all Liens of any kind (other

than the Permitted Liens) pursuant to Section 363(f) of the Bankruptcy Code, and (b) the

assumption of the Assumed Liabilities by Buyer and/or NewCo shall constitute a legal, valid and

effective delegation and assignment of all Assumed Liabilities to Buyer and/or NewCo, and shall

divest the Debtors of all liability with respect to any Assumed Liabilities, subject to payment of

the applicable Cure Costs, if any.  Unless otherwise agreed to by the Debtors and Buyer, the

Closing Date shall be September 30, 2019, and the Closing shall be deemed to occur at 12:01

a.m. (prevailing time at each Continuing Restaurant) on September 30, 2019.  For the avoidance

of doubt, Buyer shall be responsible for performing under the Assumed Contracts in accordance

with the provisions of the applicable Assumed Contract.

11.    The sale of the Purchased Assets and/or the NewCo Stock is not subject to

avoidance pursuant to Section 363(n) of the Bankruptcy Code.

12.    At the Closing, the Debtors shall be, and hereby are, authorized, empowered, and

directed, pursuant to Sections 105, 363(b), and 365 of the Bankruptcy Code, to transfer any such

Purchased Assets to NewCo, as directed by Buyer, and to sell the Purchased Assets, including the

Assumed Contracts, and/or the NewCo Stock to Buyer.  The sale of the Purchased Assets and/or

the NewCo Stock shall vest Buyer and/or NewCo, as applicable, with all right, title and interest

of the Debtors to the Purchased Assets and the NewCo Stock, in each instance, free and clear of

any and all Liens (other than the Permitted Liens) with all such Liens to attach only to the

proceeds of the sale with the same priority, validity, force, and effect, if any, as they now have in

or against the Purchased Assets and/or the NewCo Stock, subject to all claims and defenses the

Debtors may possess with respect thereto.  Following the Closing Date, no holder of any Liens in

20

the Purchased Assets and/or NewCo Stock (other than the Permitted Liens) shall interfere with Buyer's or NewCo's use and enjoyment of the Purchased Assets based on or related to such Liens, or any actions that the Debtors may take in their chapter 11 cases and no person shall take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Agreement or this Order.

13.     The provisions of this Order authorizing the sale of the Purchased Assets and/or the NewCo Stock free and clear of Liens (other than the Permitted Liens) shall be self-executing, and neither the Debtors nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order. However, the Debtors, Buyer and NewCo, and each of their respective officers, employees, and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or Buyer deem necessary, desirable or appropriate to implement and effectuate the terms of the Agreement and this Order, including amendments to the Agreement.

14.     On or before the Closing Date, the Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release, effective as of the Closing, any Liens (other than the Permitted Liens) of any kind against the Purchased Assets and/or the NewCo Stock, as such Liens may have been recorded or may otherwise exist. Except as expressly provided in the Agreement, if any Person that has filed financing statements or other documents or agreements evidencing any Liens in or against the Purchased Assets and/or the NewCo Stock (other than the Permitted Liens) shall not have delivered to the Debtors prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens that the

21

Person has with respect to the Purchased Assets and/or the NewCo Stock, effective as of the Closing, the Debtors are hereby authorized to execute such statements, instruments, releases, and other documents on behalf of the Person with respect to such Purchased Assets and/or the NewCo Stock prior to the Closing, and Buyer is authorized to file such documents after Closing.

15.     Buyer and/or NewCo shall be authorized, as of the Closing Date, to operate under any license, permit, approval, certificate of occupancy, authorization, operating permit, registration, plan and the like of any Governmental Authority relating to the Purchased Assets or held by the Debtors, and to the greatest extent available under applicable law, all such licenses, permits, approvals, certificates of occupancy, authorizations, operating permits, registrations, plans and the like of any Governmental Authority are deemed to have been, and hereby are, deemed to be transferred to Buyer and/or NewCo, as applicable, as of the Closing Date. Furthermore, immediately upon the Closing, Buyer and/or NewCo shall be entitled to continue to sell alcoholic beverages at the premises included in the Purchased Assets upon the same terms as the Debtors were selling such alcoholic beverages, until such time as Buyer and/or NewCo, as applicable, has obtained its own Liquor Licenses (as defined in the Agreement). All applicable state alcoholic beverage control, law enforcement, and regulatory agencies shall not interrupt any of the Business without first bringing the matter before this Court.  Furthermore, the Business shall, pursuant to the Management Agreement, continue operating under all existing Liquor Licenses of the Debtors until such licenses have been changed to the name of Buyer and/or NewCo, as applicable, including but limited to state alcoholic beverage licenses, state food service licenses, local occupational licenses, and any other licenses need to operate the Business with no interruption to the Business.

16.        All of the Debtors' interests in the Purchased Assets and/or the NewCo Stock to be acquired by Buyer under the Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in Buyer or NewCo, as applicable.  Upon the occurrence of the Closing, this Order shall be considered and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtor's interest in the Purchased Assets under the Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets and the NewCo Stock to Buyer or NewCo, as applicable.

17.        Except as expressly provided in the Agreement, the Assignment and Assumption Agreement, the Management Agreement, each Single Location Assignement or this Order, Buyer is not assuming nor shall it or any Affiliate of Buyer, including NewCo, be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Purchased Assets prior to the Closing Date, or any liabilities calculable by reference to the Debtors or their operations or the Purchased Assets, or relating to continuing or other conditions existing on or prior to the Closing Date, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against Buyer or any affiliate of Buyer, including NewCo.

18.        Except as otherwise expressly provided in the Agreement, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release, effective as of the Closing, their respective Liens (other than the Permitted Liens) against the Purchased Assets and/or the NewCo Stock, if any, as may have been recorded or may otherwise exist.

23

19.     Except as otherwise expressly provided in the Agreement, all Persons presently or on or after the Closing Date in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to Buyer or NewCo, as applicable, on the Closing Date or at such time thereafter as Buyer may request.

20.     Subject to the terms of the Agreement and the occurrence of the Closing Date, the assumption by the Debtors of the Assumed Contracts and the sale and assignment of such agreements and unexpired leases (other than such agreements and unexpired leases that are Designation Rights Assets that do not become Assumed Contracts pursuant to Section 2.7 of the Agreement) to Buyer or NewCo, as applicable, as provided for or contemplated by the Agreement, be, and hereby is, authorized and approved pursuant to Sections 363 and 365 of the Bankruptcy Code.

21.     The Assumed Contracts shall be deemed valid and binding and in full force and effect and assumed by the Debtors and sold and assigned to Buyer (or NewCo, as directed by Buyer) at the Closing (or such later date with respect to any Designated Rights Asset pursuant to Section 2.7 of the Agreement), pursuant to Sections 363 and 365 of the Bankruptcy Code, subject only to the payment of the Cure Costs.  The Debtors shall file with the Court within one (1) business day of entry of this Order, a notice identifying the Assumed Contracts and the Cure Costs associated with such Assumed Contracts, if any, and the Designated Rights Assets.

22.     Upon the Closing (or such later date with respect to any Designated Rights Asset pursuant to Section 2.7 of the Agreement), in accordance with Sections 363 and 365 of the Bankruptcy Code, Buyer or NewCo, as applicable, shall be fully and irrevocably vested in all right, title, and interest in and to each Assumed Contract.  The Debtors shall reasonably cooperate with, and take all actions reasonably requested by, Buyer to effectuate the foregoing.

23.       Pursuant to Sections 365(b)(l)(A) and (B) of the Bankruptcy Code, and except as otherwise provided in this Order, within seven (7) days of the Closing Date, or such other date that the Assumed Contract is assumed by the applicable Seller and assigned to Buyer and/or NewCo, Buyer shall pay or cause to be paid (or, with respect to Designation Rights Assets, promptly following the date that such contract becomes an Assumed Contract) to the non-debtor parties to any Assumed Contracts the requisite Cure Costs, if any, set forth on the notice filed with the Court on August 17, 2017 [Docket No. 172] as amended on September 29, 2109 [Docket No. 218] (the "Cure Costs Schedule"), except to the extent that a Cure Cost was amended on the record of the Sale Hearing, following the assumption and assignment thereof. The Cure Costs are hereby fixed at the amounts set forth on the Cure Costs Schedule, or the amounts set forth on the record of the Sale Hearing, as the case may be, and each non-debtor party to any Assumed Contract is forever bound by such Cure Costs applicable to such Assumed Contract.  For the avoidance of doubt, each counterparty to any of the Debtors' executory contracts or unexpired leases that are Designation Rights Assets shall also be forever bound by the Cure Costs applicable to such Assumed Contract, except, but solely to the extent, the counterparty timely asserted an objection in accordance with the provisions of the Sale Procedures Order.  Nothing in this Order is intended to modify or limit the Debtors' obligations under Section 365(d)(3) of the Bankruptcy Code with respect to obligations due under any Lease that is a Designation Rights Asset or Buyer's responsibilities under the Agreement, the Assignment and Assumption Agreement, the Single Location Assignment and the Management Agreement with respect to any Lease that is a Designation Rights Asset.

24.       Except as otherwise provided in the Agreement, the Management Agreement or this Order, all defaults or other obligations under the Assumed Contracts arising prior to the

Closing Date (without giving effect to any acceleration clauses, assignment fees, increases, advertising rates, or any other default provisions of the kind specified in Section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by payment of the Cure Costs.

25.    Any provision in any Assumed Contract that purports to declare a breach, default, or payment right as a result of an assignment or a change of control in respect of the Debtors is unenforceable with respect to the transactions and assignments authorized by this Order or any subsequent Order, and all Assumed Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Costs, if any.  No sections or provisions of any Assumed Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor party to the Assumed Contract shall have any force and effect with respect to the sale transaction and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under Section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under Section 365(e) of the Bankruptcy Code and no assignment of any Assumed Contract pursuant to the terms of the Agreement shall in any respect constitute a default under any Assumed Contract.  The non-debtor party to each Assumed Contract shall be deemed to have consented to such assignment under Section 365(c)(1)(B) of the Bankruptcy Code, and Buyer or NewCo, as applicable, shall enjoy all of the Debtors' rights and benefits under each such Assumed Contract as of the applicable date of assumption without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

26.    Buyer has satisfied all requirements under Sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of future performance under the Assumed Contracts.

27.     Subject to the payment of applicable Cure Costs, if any, and except as set forth in the Agreement, the Management Agreement and this Order, the Debtors and their estates shall be relieved of any liability for any breach of any of the Assumed Contracts occurring from and after Closing, pursuant to and in accordance with Section 365(k) of the Bankruptcy Code.

28.     A Landlord under a Lease that is an Assumed Contract may seek to recover from the Debtors (but not the Buyer) indemnification obligations, if any, arising from third-party claims asserted with respect to or arising from the Debtors' use and occupancy of the premises under a Lease that is an Assumed Contract prior to the Closing for which the Debtors had a duty to indemnify such Landlord, solely with respect to available insurance coverage that survives the Closing, if any.

29.     Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, all parties to the Assumed Contracts shall have no claims against Buyer or NewCo relating to any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of the Closing Date or arising by reason of the Closing Date, except for any amounts that are Assumed Liabilities being assumed by Buyer or NewCo under the Agreement.

30.     Notwithstanding anything to the contrary herein, but otherwise in accordance with Section 2.7 of the Agreement, Buyer shall have the right, with respect to the Designation Rights Assets, to notify the Debtors of Buyer's intention to include an as Assumed Contract or as a Purchased Asset, any Designation Rights Asset, through October 31, 2019.  The Debtors shall provide the counterparties of the Debtors' executory contracts and unexpired leases notice of Buyer's intention to assume any Designation Rights Asset.  For the avoidance of doubt, any reference in this order to "Assumed Contracts" or "Purchased Assets" shall, unless otherwise

indicated, include any Designation Rights Asset that becomes an Assumed Contract and/or Purchased Asset after the date of this Order, subject to the terms and conditions of the Agreement.

31.    Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order.  This Order and the Agreement shall be binding upon and govern the acts of all such federal, state, and local governmental agencies and departments, including any filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Purchased Assets.

32.    To the extent permitted by Section 525 of the Bankruptcy Code, no Governmental Authority may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to Buyer on account of the filing or pendency of these chapter 11 cases or the consummation of the transactions contemplated by the Agreement.

33.    Buyer has not assumed or is otherwise not obligated for any of the Debtors' liabilities other than the Assumed Liabilities as set forth in the Agreement, and Buyer has not purchased any of the Debtors' assets expressly excluded from the Purchased Assets pursuant to the Agreement (the "Excluded Assets").  Consequently, all Persons, Governmental Units (as defined in Sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Liens (other than the Permitted Liens) based upon or arising out of liabilities retained by the Debtors are may not take any action against Buyer, NewCo, the Purchased Assets or the NewCo Stock to recover

28

any Liens or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the Agreement.  All persons holding or asserting any Liens in the Excluded Assets may not assert or prosecute such Liens or any cause of action against Buyer, NewCo, the Purchased Assets or the NewCo Stock for any liability associated with the Excluded Assets.

34.     Buyer and NewCo are not "successors" to the Debtors or their estates by reason of any theory of law or equity, and neither Buyer nor NewCo shall assume, or be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, or similar liability except for the assumption of the Assumed Liabilities and as expressly provided in the Agreement.  Without otherwise limiting the foregoing, Buyer has agreed to assume gift card obligations of Sellers as of the Closing Date (and not paid by Sellers prior thereto) in an aggregate amount not to exceed $4,100,000, and Buyer shall have no liability for gift card obligations of Sellers as of the Closing Date for any amount exceeding $4,100,000.00.  Except to the extent Buyer assumes the Assumed Liabilities pursuant to the Agreement, neither the transfer of the Purchased Assets to Buyer or NewCo, as applicable, and the transfer of the NewCo Stock to Buyer, nor the fact that Buyer or NewCo is using any of the Purchased Assets previously operated by the Debtors, will cause Buyer or any of its affiliates, including NewCo, to be deemed a successor in any respect to the Debtors' business within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

35.        Further, except for the Assumed Liabilities and as provided in the Agreement, transfer of title and possession of the Purchased Assets and/or the NewCo Stock shall be free and clear of any Claims pursuant to any successor or successor-in-interest liability theory, including the following: (a) any employment or labor agreements, (b) all deeds of trust and security interests, (c) any pension or medical benefit plan of the Debtors, compensation or other employee benefit plan of the Debtors, welfare, agreements, practices and programs, (d) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, Claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Act of 1988, (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985 (unless otherwise provided for under such statute and any regulations promulgated thereunder), (x) state discrimination laws, (xi) state unemployment compensation laws or any other similar state laws, or (xii) any other state or federal benefits or Claims relating to any employment with the Debtors or any predecessors, (e) environmental or other Claims or Liens arising from existing conditions on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, or other state or federal statute, (f) any bulk sales or similar law, (g) any Tax statutes or ordinances, including, without limitation, the Internal Revenue Code of

1986, as amended, and (h) any and all theories of successor liability, including any theories on successor products liability grounds or otherwise.  Without limiting the effect or scope of the foregoing or any other provision of this Order, the Debtors shall retain responsibility for any PACA Claims or PASA Claims.  Buyer and/or NewCo, as applicable, will take the Purchased Assets, and the Buyer will take the NewCo Stock in each instance, free and clear of any and all PACA Claims and PASA Claims and the Purchased Assets and the NewCo Stock are being transferred, in each instance, free and clear of any trusts provided for in PACA or PASA.

36.	Except to the extent expressly included in the Assumed Liabilities or provided in the Agreement, Buyer and its affiliates, including NewCo, shall have no liability, obligation, or responsibility under the WARN Act (29 U.S.C. §§ 210 et seq.) or the Comprehensive Environmental Response Compensation and Liability Act, or any foreign, federal, state or local labor, employment, or environmental law by virtue of Buyer's purchase of the Purchased Assets and/or the NewCo Stock or their assumption of the Assumed Liabilities, as applicable.

37.	Except to the extent expressly included in the Assumed Liabilities or provided in the Agreement, pursuant to Sections 105 and 363 of the Bankruptcy Code, all Persons including, but not limited to, the Debtors, all debt holders, equity security holders, the Debtors' employees or former employees, Governmental Authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Lien of any kind or nature whatsoever against, in, or with respect to any of the Debtors or the Purchased Assets (other than the Permitted Liens), arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the NewCo Stock, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Purchased Assets and/or NewCo Stock to Buyer in accordance with the Agreement and this Order, shall be forever barred, estopped, and

31

permanently enjoined from asserting, prosecuting, or otherwise pursuing such Lien, including

assertion of any right of setoff or subrogation, and enforcement, attachment, or collection of any

judgment, award, decree, or order, against Buyer and NewCo or any of their affiliate, successor

or assign thereof and each of their respective current and former members, officers, directors,

attorneys, employees, partners, affiliates, financial advisors, and representatives (each of the

foregoing in its individual capacity), the Purchased Assets, or the NewCo Stock.

38.     Without limiting the generality of the foregoing, except to the extent expressly

included in the Assumed Liabilities or provided in the Agreement, Buyer shall not assume or be

obligated to pay, perform or otherwise discharge any workers' compensation debts, obligations,

and liabilities of the Debtors arising pursuant to state law or otherwise.  This Order is intended to

be all inclusive and shall encompass, but not be limited to, workers' compensation Claims or

suits of any type, whether now known or unknown, whenever incurred or filed, which have

occurred or which arise from work-related injuries, diseases, death, exposures, intentional torts,

acts of discrimination, or other incidents, acts, or injuries prior to the Closing Date, including,

but not limited to, any and all workers' compensation Claims filed or to be filed, or any

reopening of such Claims, by or on behalf of any of the Debtors' current or former employees,

persons on laid-off, inactive or retired status, or their respective dependents, heirs or assigns, as

well as any and all premiums, assessments, or other obligations of any nature whatsoever of the

Debtors relating in any way to workers' compensation liability, except as otherwise specifically

set forth in the Agreement.

39.     The Debtors are authorized and required, without further need of any

authorization from the Court, to transfer immediately, and in no event later than 10 days, to

Buyer any cash or receipts received by the Debtors that should have been submitted to or is the property of Buyer in accordance with the Agreement.

40.    Subject to the terms of the Agreement, the Agreement and any related agreements and/or instruments may be waived, modified, amended, or supplemented by agreement of the Debtors and Buyer, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not materially adverse to the Debtors and substantially conforms to, and effectuates, the Agreement and any related agreements and/or instruments and this Order.

41.    The failure specifically to include any particular provisions of the Agreement or any related agreements or instruments in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court, the Debtors, and Buyer that the Agreement and any related agreements and instruments are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing, and each such provision of the Agreement shall be enforceable by or against each of the Parties thereto.

42.    Nothing contained in this Order shall affect or impair the claims, rights, and powers of the United States of America; provided, however, that, except as otherwise provided in the Agreement, any such claims, rights or powers of the United States of America shall not be construed in any way as Assumed Liabilities under this Order or the Agreement.

43.    No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the sale and the transactions contemplated by the Agreement.

44.    This Order and the Agreement shall be binding upon and govern the acts of all Persons including, without limitation, the Debtors and Buyer, their respective successors, and

permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates, any committee subsequently appointed in these chapter 11 cases or any trustee appointed in a chapter 7 case if these cases are converted from chapter 11, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Purchased Assets.

45.       Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in these chapter 11 cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

46.       Notwithstanding Bankruptcy Rules 6004, 6006, and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any Person obtaining a stay pending appeal, the Debtors and Buyer are free to close under the Agreement at any time, subject to the terms of the Agreement.  In the absence of any Person obtaining a stay pending appeal, if the Debtors and Buyer close under the Agreement, Buyer shall be deemed to be acting in "good faith" and shall be entitled to the protections of Section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

47.     The automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and conditions of the Agreement and the provisions of this Order.

48.     Buyer may, in accordance with Section 9.6 of the Agreement, assign its rights thereunder to one or more Affiliates or other designated entities.   To the extent such assignment is effected, the definition of "Buyer" hereunder shall include any such assignee or other designated entities.  The provisions of this Order shall be binding on and inure to the benefit of all successors and assignees of Sellers and Buyer.

49.     Notwithstanding any provision in this Order, the determination of whether the Debtors may assume and assign certain contracts and leases pursuant to Section 365 of the Bankruptcy Code, including but not limited to, determination as to the appropriate cure amount (unless such cure amount was resolved at or prior to the Sale Hearing) and adequate assurance of future performance by Buyer as to each of the following listed parties, shall be expressly reserved for further proceedings pending Buyer's further determination whether to assume and have assigned the contract or lease the Debtors have with these parties, at which time Buyer and each of these listed objecting parties may schedule a further hearing before the Court on the issue of adequate assurance of future performance and/or appropriate cure amount on at least seven (7) days' prior notice to the parties affected as set forth on the attached Exhibit B (collectively, the "Objecting Parties"); provided, however, nothing herein shall alter or amend any scheduled hearing on Cure Costs.  Pending such further determinations, no assets associated with the Objecting Parties' contracts and leases shall be deemed sold or assigned to Buyer, and the rights of the Objecting Parties under Section 365 of the Bankruptcy Code with respect to adequate assurance of future performance are fully preserved; provided, however, that: (a) unless rejected,

35

the foregoing Contracts and Leases shall be Designated Rights Assets until such time as the Court resolves such outstanding objection; and (b) the failure of Buyer to provide adequate assurance of future performance at such hearing with respect to any Designation Rights Asset and any resulting failure of assignment of such Designation Rights Asset shall not result in any adjustment to the Purchase Price or otherwise give rise to any liability on the part of the Sellers. Furthermore, nothing in this Order shall prejudice the right of any party to object to the assumption and assignment of any Contract in the event that the Debtors breach their obligations under the Contract after the date hereof and prior to the assumption and assignment of the Assigned Lease; provided, however, that the counter party to any such Contract must give counsel to the Debtors and Buyer notice in writing by email to dpacitti@klehr.com and npernick@coleschotz.com, respectively, of the breach within three (3) business days of such counter party having knowledge of the occurrence of the breach.

50.       Pursuant to the Agreement and the Management Agreement, obligations owed to the Objecting Parties shall be fulfilled as they come due, including any rent payments or requirements related to insurance policies provided in the Objecting Parties' contracts and leases. Notwithstanding any provision of this Order, the Objecting Parties shall retain all their rights regarding the Debtors' timely performance of all obligations under the Objecting Parties' contracts and leases, including without limitation their rights under Section 365(d)(3) of the Bankruptcy Code, until such time as the Debtors reject or assume and assign the Objecting Parties' contracts and leases.

51.       The Debtors are authorized to enforce their rights under any confidentiality agreements they entered into with other potential bidders with respect to the Purchased Assets for the benefit of Buyer and NewCo for the term of each respective confidentiality agreement.

36

52.    This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Sale Procedures Order, and the Agreement in all respects and to decide any disputes concerning this Order, the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and any Assumed Contracts, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Purchased Assets and/or the NewCo Stock free and clear of all Liens (except Permitted Liens).

53.    Notwithstanding anything to the contrary in this Sale Order, the Agreement, or the Sale Motion, the Debtors, the DIP Lenders, and the Multnomah County Oregon Tax Collector (hereafter, "Multnomah County" and collectively, the "Parties") have resolved Multnomah County's Limited Objection to the Sale [Docket No. 191] by agreeing that:

(1) Multnomah County's $110,711.20 statutory lien (the "Lien") under Oregon state law for unpaid 2019 *ad valorem* taxes on the Debtors' personal property located within Multnomah County, Oregon (i.e., on the real and personal property located at: (i) Stanford's Restaurant located at 913 Lloyd Center, Portland, OR 97323 (Account Number P630344 in the amount of $12,581.43); (ii) Henry's Tavern located at 7000 NE Airport Way, Portland, OR 97218 (Account Number P674666 in the amount of $23,671.60); (iii) Henry's 12th Street Tavern located at 10 NW 12th Ave., Portland, OR 97209 (Account Number P630352 in the amount of $18,155.74); (iv) Stanford's Restaurant located at 7000 NE Airport Way, Portland, OR 97218 (Account Number P630351 in the amount of $8,600.02); (v) Stanford's Restaurant located at 1440 Jantzen Beach Center, Portland, OR 97217 (Account Number P630347 in the amount of $10,225.97); (vi) Portland Seafood Company located at 9722 SE Washington St., Portland, OR 97216 (Account Number P630343 in the amount of $10,818.66); (vii) Portland City Grill located at 111 SW 5th Avenue, Floor 30, Portland, OR 97204 (Account Number P630340 in the amount of $17,941.89); and (viii) Marina Fish House #60 located at 0425 SW Montgomery St., Portland, OR 97201 (Account Number P630339 in the amount of $8,715.89)) shall attach to the Purchase Price with the same validity, priority, force and effect as existed immediately prior to the closing,

37

pending final agreement among the Parties or Court determination as to the ultimate validity and priority of the Lien as set forth herein;

(2) the Debtors shall reserve and segregate apart from all other funds $110,711.20 of the Purchase Price (the "Reserved Proceeds");

(3) any party seeking to challenge the validity or priority of Multnomah County's Lien shall file an objection thereto within sixty (60) days after the entry of the Sale Order;

(4) if a challenge to the validity or priority of Multnomah County's Lien is timely filed, then the Court shall resolve all issues related to the distribution of the Reserved Proceeds; and

(5) finally, the Parties agree that if a challenge to the validity or priority of Multnomah County's Lien is not timely filed, and a chapter 11 plan is not confirmed within six months after the closing on the Sale, or the Debtors move to convert their chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, or the Debtors move for a dismissal of their chapter 11 cases, then the Debtors shall promptly pay Multnomah County the Reserved Proceeds, without the need for additional authorization by the Court, unless otherwise paid in full by Buyer or Assignee.

Dated: September 25th, 2019
Wilmington, Delaware

JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE

38